RENSHAW v SAMUELS

Docket No. 55095. Submitted February 11, 1982, at Detroit.—Decided July 12, 1982.

Leroy Renshaw, a subcontractor, brought an action against Walter R. Samuels and Regional Construction Company to recover money owing to Renshaw for work done on a construction project for which Samuels had hired Regional as contractor. One month prior to trial plaintiff filed a mechanics' lien for labor performed on the project. The Genesee Circuit Court, Harry B. McAra, J., granted a partial summary judgment against Regional and issued a writ of garnishment against Samuels. At trial, the court found that Renshaw was free to file the mechanics' lien up to the time of trial because the sworn statements submitted by Regional to Samuels as a condition of periodic payment during the construction project were defective in that they did not contain the names of several subcontractors, including Renshaw. The court awarded Renshaw a portion of his claim pursuant to the mechanics' lien statute and held that the balance was owed by Samuels under a theory of garnishment of Regional's claims and as part of a trust fund created under the builders' trust fund act. The Court refused to allow Samuels a setoff for claims he had against Regional. Samuels appealed. *Held:*

1. The trial court erred in allowing plaintiff to establish a mechanics' lien. Samuels was not responsible for ensuring the accuracy of the sworn statement submitted by Regional. It was incumbent upon plaintiff to serve a notice of intent to claim a lien or to ensure that his claim was contained in the sworn statement. Further, plaintiff did not deal directly with Samuels

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur 2d, Mechanics' Liens §§ 23, 24.

[2, 3] 53 Am Jur 2d, Mechanics' Liens §§ 169-171, 175.

[4] 6 Am Jur 2d, Attachment and Garnishment § 372.

[5] 4 Am Jur 2d, Appeal and Error § 76.

Application of "clearly erroneous" test of Rule 52(a) of Federal Rules of Civil Procedure to trial court's findings of fact based on documentary evidence. 11 ALR Fed 212.

[6] 53 Am Jur 2d, Mechanics' Liens § 332.

so as to come within the statutory exception to the notice requirement.

2. The trial court erred in not allowing Samuels to set off his claims against Regional, even where those claims did not involve transactions concerning the plaintiff. Because the evidence regarding those claims is conflicting, the matter is remanded for a determination of the amount of the setoff to be applied in the garnishment action.

3. The builders' trust fund act does not impose a trust upon funds withheld by Samuels. Under that act the contractor or subcontractor is considered a trustee of funds paid to him pursuant to the building contract. The trial court erred in holding that a trust was imposed upon funds held by Samuels.

Reversed and remanded.

1. MECHANICS' LIENS — JUDICIAL CONSTRUCTION.

The mechanics' lien statute, being in derogation of common law, is to be strictly construed to the point the lien attaches; thereafter, because of the statute's remedial character, it may be construed liberally (MCL 570.1 *et seq.;* MSA 26.281 *et seq.).*

2. MECHANICS' LIENS — NOTICE — SWORN STATEMENTS.

A subcontractor who desires protection under the mechanics' lien statute may serve a notice of intent to claim a lien or he may check to ensure that his claim is included in the sworn statement required to be given by the primary contractor to the owner; he may not rely upon the owner's verification of the accuracy of the sworn statement and be allowed a mechanics' lien if his name does not appear in the statement (MCL 570.4; MSA 26.284).

3. MECHANICS' LIENS — NOTICE — DIRECT DEALING.

A mechanics' lien claimant dealing directly with the owner is not required by the statute to provide either notice of furnishing materials or labor or notice of intention to claim a lien and of the owner's right to demand a sworn statement from the contractor; those requirements by their terms apply only to a person furnishing labor or material "to [for] a contractor or subcontractor" (MCL 570.1; MSA 26.281).

4. GARNISHMENT — SETOFFS — COURT RULES.

A garnishee defendant may claim any setoff available to him against the principal defendant even where those claims do not involve transactions concerning the plaintiff in the garnishment action (GCR 1963, 738.6).

5. APPEAL — FINDINGS OF FACT — CLEAR ERROR.

A trial court's finding of fact is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.

6. MECHANICS' LIENS — BUILDERS' TRUST FUND ACT — STATUTES.

The builders' trust fund act and the mechanics' lien statute are separate protections, providing two distinct avenues of relief to unpaid laborers and materialmen (MCL 570.1 *et seq.*, 570.151; MSA 26.281 *et seq.*, 26.331).

7. STATUTES — BUILDERS' TRUST FUND ACT — CONTRACTORS.

The builders' trust fund act provides that a contractor or subcontractor is to be considered to be a trustee of funds paid to him pursuant to a building contract; it does not provide for imposition of a trust upon funds withheld from a contractor by an owner (MCL 570.151; MSA 26.331).

*Jeffrey A. Chimovitz,* for plaintiff.

*Hiller, Larky & Hoekenga* (by *Marc M. Susselman),* for defendant Samuels.

Before: D. C. RILEY, P.J., and D. E. HOLBROOK, JR., and M. J. KELLY, JJ.

M. J. KELLY, J. Plaintiff, Leroy Renshaw, commenced this action against defendants Regional Construction Company (Regional) and Walter P. Samuels to recover $27,188 owed to plaintiff for work done on Samuels' construction project. Pursuant to the mechanics' lien act, MCL 570.1 *et seq.;* MSA 26.281 *et seq.,* the builders' trust fund act, MCL 570.151; MSA 26.331, and the court rule governing garnishment, GCR 1963, 738.13, the trial court rendered judgment in plaintiff's favor against defendant Samuels and also awarded $2,900 in attorney fees. Defendant Samuels appeals as of right, GCR 1963, 806.1.

In 1977, Samuels, a general partner of a limited partnership which owns the Carman Flint Shop-

ping Center, hired Regional to perform various construction projects in the shopping center. These projects were funded through a loan by City National Bank of Detroit. Samuels arranged for the lender to make payments to Regional every 30 days. However, the payments were not to be made unless both the lender and Samuels inspected the work and Samuels personally approved the disbursement. As a further condition of payment, Regional was required to submit a sworn statement listing all subcontractors that had provided labor or materials for the projects. The statements certified that the subcontractors listed were all the people who had worked on the projects. The payments were to apply to both material and labor employed on the jobs.

Among the subcontractors employed by Regional was plaintiff Renshaw and his company. According to Renshaw, he met Samuels' architect but did not meet either Samuels or defendant's supervisor, Joe DeLeo. While working on the various projects, Renshaw kept men on the job, visited the shopping center once a day in a truck with his firm's name written on it, and obtained building permits for the project in his own name. Renshaw worked on eight different jobs within the shopping center, billing Regional for over $149,000 in labor and material. When he only received $122,000 in payment, Renshaw commenced this action against defendants to recover the remaining $27,188. Approximately one month prior to trial, plaintiff filed a mechanics' lien for labor done on the shopping center.

On November 20, 1978, a partial summary judgment for $25,717.15 was entered against Regional. Pursuant to that judgment, a writ of garnishment was issued against Samuels. Samuels answered

that any debt owed by Samuels to Regional was offset by claims he had against Regional. According to Samuels, he refused to pay $19,808.90 to Regional because of claimed or suspected setoffs arising out of the shopping center projects.

During the trial, plaintiff testified that the entire $27,188 was for labor because he used the money paid by Regional to pay his own subcontractors and materialmen. Plaintiff further testified that he had performed several small jobs for Samuels and had been paid for those jobs by Samuels. Plaintiff also introduced a list of setoffs claimed by Samuels against Regional. According to plaintiff, this list was an admission against defendant's interest. The court admitted the list of setoffs. Finally, plaintiff testified that he never saw the sworn statements concerning payment of subcontractors submitted by Regional to Samuels.

The trial court found that the sworn statements submitted by Regional were defective because they did not contain the names of a number of subcontractors including plaintiff. The court reasoned that the sworn statements were defective and never qualified as "sworn statements" under MCL 570.4; MSA 26.284; therefore, plaintiff was free to file a mechanics' lien until the day of trial. The court awarded plaintiff $12,799.31 in unpaid labor and $1,279.92 as an unpaid 10% contract fee. The plaintiff was also given $2,900 in attorney fees under the mechanics' lien statute. The court also concluded that plaintiff was entitled to the balance of the $27,188 under a theory of garnishment of Regional's claims against Samuels and as part of the trust fund created in monies still held by Samuels under the builders' trust fund act. The court refused to allow Samuels to claim a setoff against these funds because he failed to introduce

evidence supporting the claimed setoff. Defendant appeals the trial court's rulings.

## I

On appeal, defendant argues that the trial court erred when it subjected the property to a mechanics' lien for labor done by plaintiff. Relying on MCL 570.4; MSA 26.284, defendant argues that the sworn statements submitted by Regional, which did not list plaintiff as a subcontractor, prevent plaintiff from filing the mechanics' lien after payments in reliance on those statements were made. Plaintiff counters by arguing that defendant should have verified the statements to insure their accuracy. Plaintiff contends that because his name was not contained in the list of subcontractors, the sworn statements do not bar his mechanics' lien.

The mechanics' lien statute, MCL 570.1 *et seq.;* MSA 26.281 *et seq.,* establishes an elaborate procedure to ensure that subcontractors are paid for material and labor. The statute provides that subcontractors have a lien upon any building they have provided labor or material for if within 90 days of providing material or labor they serve upon the owner a written notice of the material or labor. MCL 570.1; MSA 26.281. The statute further provides that a notice for labor may be served after the 90-day period so long as it is served prior to the owner receiving a sworn statement, MCL 570.4; MSA 26.284, from the contractor. MCL 570.1; MSA 26.281. The statute also provides:

"The owner, part owner, or lessee may at any time retain from any moneys due or to become due to the original contractor, an amount sufficient to pay all

demands owing or unpaid to any subcontractor, material-man or laborer, who has recorded and served the notice in manner and form as provided in section 1 of this act. The original contractor shall, whenever any payment of money shall become due from the owner, part owner, or lessee, or whenever he desires to draw any money from the owner, part owner or lessee on such contract, make out and give to the owner, part owner, or lessee, or his agent, a statement under oath of the number and names of every subcontractor or laborer in his employ, and of every person furnishing materials, giving the amount, if anything, which is due or to become due to them, or any of them, for work done or materials furnished, and the owner, part owner, or lessee, or his agent, may retain out of any money then due or to become due to the contractor, an amount sufficient to pay all demands that are due or to become due to such subcontractors, laborers, and material men, as shown by the contractor's statement, and pay the same to them according to their respective rights, and all payments so made shall, as between such owner, part owner, or lessee, and such contractor, be considered the same as if paid to such original contractor. Until the statement provided for in this section is made, in manner and form as herein provided, the contractor shall have no right of action or lien against the owner, part owner, or lessee on account of such contract, and any payments made by the owner, part owner, or lessee, before such statement is made, or without retaining sufficient money, if that amount be due or is to become due, to pay the subcontractors, laborers or material men, as shown by the statement, shall be considered illegal and made in violation of the rights of the persons intended to be benefited by this act, and the rights of such subcontractors, laborers and material men to a lien shall not be affected thereby." MCL 570.4; MSA 26.284.

The statute, being in derogation of common law, must be strictly construed to the point the lien attaches but, thereafter, because of its remedial character, a liberal construction may be indulged.

*Vorrath v Garrelts,* 35 Mich App 463, 466; 192 NW2d 547 (1971).

The mechanics' lien statute was enacted to protect subcontractors, materialmen, and laborers. However, the Legislature also enacted MCL 570.4; MSA 26.284 to protect the owners. In *Smalley v Ashland Brown-Stone Co,* 114 Mich 104, 108; 72 NW 29 (1897), the Court interpreted the predecessor statute to MCL 570.4; MSA 26.284, stating:

"Under this provision, two things are requisite before the owner may make payment to the original contractor with safety: (1) That he shall not have received the notice from the subcontractor, and (2) the sworn statement of the original contractor. It is true that, for his own protection, the subcontractor, if he wishes to prevent a payment which will be valid as *against him,* must see to it that the sworn statement of the original contractor (if the owner exacts one) embodies his claim, or must himself serve the notice provided by section 1. This view is strengthened by the provision of section 1 that the notice by the subcontractor shall be sufficient, although not served within the 10 days provided, if it be served on the owner before the sworn statement by the original contractor is made. The reason for this is that, if the notice by the subcontractor is not served, the owner may act upon the sworn statement by the original contractor."

MCL 570.4; MSA 26.284 establishes a procedure which protects both the owner and the subcontractor. The owner is subject to multiple claims by the subcontractor should he pay the contractor without first receiving a sworn statement. The subcontractor is protected if he serves a notice of lien before the sworn statement is given to the owner. If the owner is responsible for ensuring the accuracy of the sworn statements, the statements serve no purpose. Where a subcontractor desires protection, he may serve a notice of intent to claim a

lien or check to ensure his claim is contained in the contractor's sworn statement.

We are unpersuaded by plaintiff's citation to *Vorrath, supra.* In *Vorrath,* a contractor, who had submitted a sworn statement which omitted 8 of 18 subcontractors, sought to enforce a mechanics' lien against the owner. This Court found that the statement did not substantially comply with MCL 570.4; MSA 26.284 and prevent the mechanics' lien from attaching. *Id.,* 466. In *Vorrath,* the Court refused to permit a contractor to benefit from his own false sworn statement. This is entirely different than preventing an innocent owner from relying on such a statement.

Finally, the circuit court found that defendant could not rely upon the statements because he should have been aware that plaintiff was a subcontractor working on the construction projects. Inherent in the language of the mechanics' lien statute is an exception to the notice provision for those who deal directly with the owner. *Burton Drywall, Inc v Kaufman,* 402 Mich 366, 376; 263 NW2d 249 (1978). Where a claimant deals directly with the owner, he does not furnish labor or material to or for a contractor and is not required to furnish notice of lien for materials or labor. *Id.,* 377.

We do not find that plaintiff dealt directly with defendant. Plaintiff was employed by Regional, sent his invoice to Regional, submitted sworn statements and waivers of lien to Regional, and expected payment from Regional. While plaintiff did take out building permits under his own name, talked with defendant's architect, and visited the work site, this is not sufficient to establish direct dealing. See *Beck v Delta Recreation Corp,* 2 Mich App 518, 523-524; 140 NW2d 764 (1966).

The trial court erred when it awarded plaintiff a mechanics' lien on defendant's property. Because a mechanics' lien was not perfected, the trial court also erred when it awarded plaintiff $2,900 in attorney fees under the mechanics' lien statute.

## II

Defendant's second claim of error concerns the trial court's refusal to permit a setoff of defendant's claims against Regional in the garnishment action. Some of the setoffs concerned transactions which did not involve Renshaw. The trial court ruled that GCR 1963, 738, when read with MCL 570.1; MSA 26.281, prohibited a garnishee defendant from claiming setoffs against the principal defendant which arise from a transaction not involving the plaintiff. The trial court further ruled that defendant had failed to introduce any evidence which supported its setoff claim. On appeal, defendant challenges both rulings.

GCR 1963, 738.6 states:

"Disclosure. The garnishee shall file with the clerk of court a disclosure under oath within 15 days after the date of the service of the writ upon him. The disclosure shall reveal any liability to the principal defendant as specified in sub-rule 738.5, and, except as to claims for unliquidated damages for wrongs or injuries, may claim any setoff of which the garnishee could have availed himself against the principal defendant if he had not been garnisheed. Unless the plaintiff takes further steps as authorized by these rules within 10 days after the receipt of notice of the filing of the ganishee's disclosure, the disclosure shall be held to be sufficient."

In 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 621, the authors write, "The

garnishee may claim any setoffs available to him against the principal defendant, except claims for unliquidated damages for wrongs or injuries."

The language of the court rule clearly states that the garnishee may claim any setoff available to him against the principal defendant. In a garnishment action, the garnishee does not owe the money directly to the plaintiff. Rather, he owes the money to the principal defendant and should not be required to pay more than he owes. Therefore, the trial court erred when it did not permit the setoff of claims even where those claims did not involve transactions concerning plaintiff. Furthermore, we find that the trial court erred when it interpreted GCR 1963, 738 in light of the mechanics' lien statute. The two remedies are entirely different and plaintiff is protected under the statute by properly filing a lien.

The court also found that defendant had failed to prove its claim of setoff because no evidence supporting the claim was introduced during the trial. GCR 1963, 517.1 governs our review of a trial court's findings of fact and we will not set those findings aside unless they are clearly erroneous. A finding of fact is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

During the trial, plaintiff testified to a number of claimed setoffs, naming them and some of the claimed amounts, but denied he was involved in those transactions. Samuels' deposition was introduced in which he claimed that he had $25,000 in setoffs against Regional. Finally during trial, plaintiff introduced defendant's answer to interrog-

atories into evidence as an admission by the defendant. The answers to the interrogatories contained a claimed setoff of $19,808.90 against Regional. On appeal, plaintiff argues that the answers were admitted as admissions and not as substantive evidence. However, if the interrogatories were not substantive evidence, they were irrelevant and should have been excluded under MRE 402.

A review of the record discloses that conflicting evidence was introduced showing the amount of setoff claimed by defendant. The trial court's finding that the record was void of evidence of the amount of setoff is clearly erroneous. Because of the conflicting testimony, we must remand this case to the trial court for a hearing to determine the amount of setoff claimed by defendant.

III

Defendant further argues that the trial court erred when it concluded that any money withheld by an owner from a contractor was part of a trust fund created for the protection of subcontractors under MCL 570.151; MSA 26.331. The builders' trust fund act, MCL 570.151; MSA 26.331, reads:

"In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes."

The builders' trust fund act and the mechanics' lien statute are two separate protections, providing two distinct avenues of relief to the unpaid laborers and materialmen. *National Bank of Detroit v*

*Eames & Brown, Inc,* 396 Mich 611, 622; 242 NW2d 412 (1976).

The clear and unambiguous language of MCL 570.151; MSA 26.331 provides that the contractor or subcontractor shall be considered the trustee. The statute does not impose a trust upon funds held by the owner. Furthermore, the statute provides that the trust should be invoked as to all money paid by any person to a contractor or to a subcontractor. The trial court erred when it imposed a trust upon the funds held by defendant.

We do not find plaintiff's reliance upon *NBD, supra,* to be persuasive. In *NBD,* a secured creditor of a contractor sued to recover money paid directly to a subcontractor. The Supreme Court ruled that the builders' trust fund act applied even though the money was not paid to the contractor. This ruling is consistent with the purpose of the act, which is to protect subcontractors. In this case, however, the money claimed in trust is not owed the contractor and a trust should not be imposed upon it.

IV

Defendant's final claim of error concerns plaintiff's claim that it is a third-party beneficiary to defendant's contracts with Regional. The trial court never reached a decision on this claim and we will not review it on appeal. *Brewster v Martin Marietta Aluminum Sales, Inc,* 107 Mich App 639, 646; 309 NW2d 687 (1981).

The trial court's finding that the mechanics' lien statute and the builders' trust fund act were applicable to this case are reversed. This case is remanded to the trial court to determine the amount of setoff claimed by defendant in the garnishment action.