DURANT CONSTRUCTION, INC v GOURLEY

Docket No. 57575. Submitted March 2, 1983, at Detroit.—Decided
    May 17, 1983. Leave to appeal applied for.

Durant Construction, Inc., brought an action for foreclosure of a
    mechanics' lien against Roy E. and Judith Gourley and several
    others including the National Bank of Ypsilanti. The Washte-
    naw Circuit Court, William Ager, Jr., J., granted an accelerated
    judgment in favor of the bank after holding that plaintiff had
    given to the bank valid waivers of its lien. Plaintiff appeals,
    alleging that the waivers given were intended to apply only to
    work done prior to the time the waivers were executed. *Held:*

    1. A waiver of a mechanics' lien must be clear and unambig-
    uous. The trial court herein correctly held that the plaintiff
    furnished executed, completed waivers of all past and future
    mechanics' liens.

    2. Evidence of custom and usage in the trade was properly
    admitted to aid in determination of the meaning of the alleg-
    edly ambiguous language in the waivers.

    Affirmed.

1. MECHANICS' LIENS — WAIVER OF LIEN — MORTGAGES.

    A construction lien has priority over a mortgage instrument
    recorded subsequent to the commencement of the construction
    work; however, a holder of such mechanics' lien may waive
    such right if the waiver is clear and unambiguous, whether it is
    expressly made by contract or agreement or implied from the
    acts and conduct of the parties.

2. MECHANICS' LIENS — BURDEN OF PROOF.

    The burden of proof in a mechanics' lien case rests upon the
    party who seeks to show a valid waiver of the lien.

3. MECHANICS' LIENS — WAIVER OF LIEN.

    A mechanics' lien, once waived, may not be revived absent an

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur 2d, Mechanics' Liens §§ 264, 274, 290.
[2, 3] 53 Am Jur 2d, Mechanics' Liens § 290 *et seq.*
[4] 17 Am Jur 2d, Contracts § 247 *et seq.*

express agreement binding upon all those whose interests are adversely affected.

4. CONTRACTS — EVIDENCE — CUSTOM AND USAGE.

Evidence of custom and usage of a trade is admissible to explain ambiguous language in a contract.

*Schuur, Keating & Wells, P.C.* (by *Patrick J. Keating),* for plaintiff.

*Fischer, Franklin, Ford, Simon & Hogg* (by *George Hogg, Jr.,* and *Arthur J. LeVasseur),* for National Bank of Ypsilanti.

Before: BEASLEY, P.J., and V. J. BRENNAN and WAHLS, JJ.

BEASLEY, J. Plaintiff, Durant Construction, Inc., appeals as of right from an order granting accelerated judgment in favor of defendant, National Bank of Ypsilanti. The gravamen of this case is whether a first mortgage held by defendant bank has priority over a mechanics' lien held by plaintiff. The issue depends upon the legal effect of alleged waivers of lien given by plaintiff to defendant.

In ruling upon defendant's first motion for accelerated judgment, the trial court held that the language used in the waiver was similar to that found to be ambiguous in *Williams & Works, Inc v Springfield Corp.*[1] After an evidentiary hearing was held, the trial court made specific findings of fact and granted judgment in defendant's favor.

The record shows that on April 2, 1979, plaintiff, a construction firm involved in residential and commercial building, began renovation work on real property pursuant to an agreement with the

---

[1] 81 Mich App 355, 361-362; 265 NW2d 328 (1978), *rev'd on other grounds* 408 Mich 732; 293 NW2d 304 (1980).

four property owners. On May 4, 1979, the property owners, in exchange for purchase money and construction loans, gave a mortgage and mortgage note to defendant bank. The validity of defendant's mortgage, which was recorded on May 11, 1979, was not an issue in the proceedings.

Over an 11-week period in 1979, defendant disbursed $267,472.71 toward the construction of the property. Three payments totalling $197,228.47 were distributed to plaintiff and the remainder was distributed to other parties. In return for the second and third payments, plaintiff, on June 6, 1979, and July 16, 1979, executed waivers of lien which contained the following language:

"For a valuable consideration, paid to the undersigned, the receipt whereof is hereby confessed and acknowledged, the undersigned hereby waive, release and relinquish any and all claims or right of lien which the undersigned now have or may have hereafter upon the premises."

On January 31, 1980, plaintiff filed a complaint in the Washtenaw County Circuit Court against the four property owners to foreclose on its mechanics' lien. Among other things, plaintiff sought a determination that its lien had priority over the mortgage held by defendant bank against the property. Plaintiff alleged that its mechanics' lien for labor, materials, and equipment was effected on April 2, 1979, and that the parties intended for the waivers to have application only to past work.

While recognizing that a valid mechanics' lien has priority over a subsequently recorded mortgage, defendant contends that the clear and unequivocal waivers of lien by plaintiff resulted in plaintiff's mechanics' lien being inferior to defendant's mortgage.

In a comprehensive written opinion, the trial court made the following pertinent findings of fact:

"This court's review of the evidentiary hearing transcript indicates 1) Durant's subjective intent on signing the waivers was to only waive any lien for work already completed because this was a 'cost-plus' contract where the total cost (lien) was not predictable * * *, 2) Durant did not use a partial waiver form because he intended to waive all liens for completed work * * *, 3) Durant believed, because a 'cost-plan' contract was involved, all work done after each payment was a new contract * * *, 4) the bank intended to have a first priority mortgage * * *, 5) the bank used standard waiver forms used in the trade for construction loans * * *, and 6) the trade custom is for the bank to always get a first mortgage position unless a subordinated position was specifically structured into the loan * * *. * * *

"This court holds the plaintiff made a full waiver of all past and future mechcanics' liens thus giving the defendant a priority position. Hence the motion for accelerated judgment by the defendant is granted."

Under MCL 570.1119; MSA 26.316(119), a construction lien, which takes effect when the first actual physical improvement occurs, has priority over a mortgage instrument recorded subsequent to the commencement of the construction work.[2] A holder of a mechanics' lien may release such right, but the waiver must be clear and unambiguous.[3] A mechanics' lien may be expressly waived by contract or agreement, or it may be impliedly waived from the acts and conduct of the parties.[4]

[2] See, *e.g., Portage Realty Corp v Baas,* 100 Mich App 260, 269; 298 NW2d 892 (1980). For comprehensive analyses of what constitutes "commencement of a building", see *Williams & Works, Inc v Springfield Corp,* 408 Mich 732, 740-754; 293 NW2d 304 (1980); Anno: 1 ALR3d 822.

[3] *Saginaw Lumber Co v Wilkinson,* 266 Mich 661, 665; 254 NW 240 (1934).

[4] 57 CJS, Mechanics' Liens, § 222-224, pp 792-797; 53 Am Jur 2d,

In a mechanics' lien case, the burden of proof rests upon the party who seeks to show a valid waiver of the lien.[5] Once waived, a mechanics' lien cannot be resuscitated in the absence of an express agreement binding upon those whose interests are adversely affected.[6]

A review of the evidentiary hearing transcript reveals that plaintiff's president, Thomas Durant, who had 14 years of experience in the construction business, understood the difference between a full waiver and a partial waiver. Notably, Durant testified that he used partial waiver forms in other cases and that he prepared the partial waivers that were submitted to defendant by the subcontractors involved in the project.

An assistant vice president of defendant bank who was involved in the transactions with plaintiff testified that it was the bank's policy to disburse money on construction loans only where the bank had the first lien on the property:

*"Q. [defendant's attorney]:* Why would you have them? Why would you request those [waivers of lien]?

*"A. [witness John Klee]:* Well, there would be two main reasons. Number one, to insure that everbody was paid. And number two, to insure the bank of a first mortgage.

*"Q.* Was it your intent, then, to make this lien conditional upon obtaining a first lien on the property?

*"A.* Yes. * * *

*"Q.* Did you ever in that capacity agree to disburse

Mechanics' Liens, § 289, p 824; 16 Mich Law & Practice, § 51, pp 159-161. In *Heide v Societatea Romana,* 262 Mich 394; 247 NW 702 (1933), the Supreme Court held that the priority position of a lienholder can be altered where the surrounding circumstances render it inequitable for the lienholder to take priority over the construction lender.

[5] *Sturgis Savings & Loan Ass'n v Italian Village, Inc,* 81 Mich App 577, 580; 265 NW2d 755 (1978); MCL 570.1115; MSA 26.316(115).

[6] *Au Sable River Boom Co v Sanborn,* 36 Mich 358, 364 (1877); 16 Mich Law & Practice, Mechanics' Liens, § 51, pp 159-160.

money on a construction loan without being assured the National Bank of Ypsilanti would have the first mortgage?

"*A.* On this particular one?

"*Q.* On any?

"*A.* No.

"*Q.* Was your intent that these waivers and these sworn statements would insure the National Bank of Ypsilanti of the first lien?

"*A.* Yes. You know, there were cases where we took second mortgages, we understood our position.

"*Q.* But, in this situation it was?

"*A.* It was clear that we had the first mortgage."

Defendant also presented the testimony of Joseph Koretz, an attorney and expert in the area of construction loans. Koretz stated that it is the custom and practice of the construction trade for a lending institution, in order to secure a first mortgage and lien on the premises, to require full waivers of liens before distributing portions of the construction loan. In support of defendant's interpretation of the ambiguous language in the waivers, Koretz testified that a lending institution would not accept a partial waiver of lien from a general contractor.

After a careful review of the record, we conclude that the trial court correctly held that plaintiff furnished defendant executed, completed waivers of all past and future mechanics' liens, which resulted in defendant's mortgage having priority over plaintiff's lien. The parties intended for plaintiff's lien to be subordinate to defendant's mortgage.

The record does not support plaintiff's assertion that it did not waive its lien in regard to labor and materials furnished subsequent to July 16, 1979,

the date of the second waiver. Of particular import to our holding is the testimony of plaintiff's president, Thomas Durant, that when he learned the construction funds were almost depleted, he continued to supply labor and materials to the property owners based on an assurance from them that additional financing was available.[7] Durant's position that the parties intended for the waivers to apply only to past work is belied by his testimony and by the fact that he did not choose to use partial waiver forms.

We have considered plaintiff's claim that the trial court erred in considering evidence of trade customs and practices in determining the meaning of the waivers executed by plaintiff. It is noteworthy that plaintiff did not raise an objection at the evidentiary hearing to the propriety of the expert testimony and, thus, is precluded from appellate review of this issue.[8] Nevertheless, we review and hold that the evidence was properly received, since evidence of custom and usage of a trade is admissible to explain ambiguous language in a contract.[9] Inasmuch as the purpose of the evidentiary hearing was to determine the meaning of the ambiguous language in the two waivers of lien, the trial court did not err in admitting evidence of custom and usage of the construction trade.

Affirmed.

[7] After receiving his third draw from the construction mortgage, Durant learned in July, 1979, that only $7,500 remained in the construction account. Nevertheless, he continued to work on the property until October, 1979, because one of the principal parties informed him that additional financing was available.

[8] *Wiers v Shaw-Walker Co*, 171 Mich 324, 330; 137 NW 145 (1912); *Town & Country Dodge, Inc v Dep't of Treasury*, 118 Mich App 778, 789-790; 325 NW2d 577 (1982); 2 Mich Law & Practice, Appeal, § 185, p 65.

[9] *Chaney v Lake Drive Garage*, 252 Mich 412, 414; 233 NW 602 (1930); *Ledyard v Hibbard*, 48 Mich 421, 427; 12 NW 637 (1882); 9 Wigmore, Evidence (Chadbourn rev), § 2440, pp 131-135.