HORTON v VERHELLE

Docket No. 198929. Submitted May 5, 1998, at Lansing. Decided September 29, 1998, at 9:00 A.M.

Randy Horton, a subcontractor to general contractor Daniel Hughes in the construction of Richard and Lois Verhelle's house, brought an action in the Eaton Circuit Court against the Verhelles, Hughes, the Homeowner Construction Lien Recovery Fund, and various subcontractors and suppliers with recorded lien claims on the property, seeking foreclosure on its construction lien. Several of the subcontractors or suppliers filed cross-claims seeking foreclosure on their liens. Hughes did not file an answer. On motions for summary disposition, the court, G. Michael Hocking, J., ordered the Verhelles to pay to the court the balance they owed to Hughes, discharged all liens on the property, ordered the fund to pay the lien claims of Horton and some of the other subcontractors or suppliers, and allowed those lien claimants who were not members of the fund to recover a pro rata share of the balance paid to the court by the Verhelles. The fund appealed, and RBK Corporation, Clark Foundation Company, Darling Builders Supply Co., Roger D. Hunnicutt, Hunnicutt Plumbing & Heating, and Stahl & Sons, Inc. (hereafter RBK et al.) cross appealed.

The Court of Appeals *held*:

1. A lien claimant's failure to provide a timely notice of furnishing defeats the claimant's right to liens for work performed before the service of the notice of furnishing only to the extent that the owner made payments to the contractor pursuant to a contractor's sworn statement or a waiver of lien. The failure of Horton and RBK et al. to timely serve their notices of furnishing does not defeat their lien rights because the sworn statement by Hughes, on which the Verhelles relied in making payment to Hughes, was invalid because it was not dated, signed, or sworn. Summary disposition for Horton and RBK et al. on the ground that their lien rights were not defeated on the basis of failure to provide notices of furnishing must be affirmed.

2. The trial court erred in determining that Darling Builders and Hunnicutt Plumbing & Heating were entitled to recover from the

fund. These claimants unconditionally waived their liens and therefore cannot enforce them.

3. A question of fact exists concerning whether purported waivers of lien by RBK and Clark Foundation were forged. The matter must be remanded for findings of fact with respect to the claimed forgery. The waivers, if forged, cannot defeat the lien rights of RBK and Clark Foundation.

4. The trial court erred in granting summary disposition for Stahl & Sons with respect to its cross-claim against the fund. Only members of the fund can recover from the fund; Stahl & Sons was not a member of the fund.

5. A lien claimant cannot recover from the fund unless it proves that the contractor or subcontractor with whom it contracted was licensed if required by law to be licensed. In this case, it is not clear whether RBK contracted with Hughes or Holt Building Company, which was not a licensed residential builder. Summary disposition for RBK was granted in error, and the matter must be remanded for a determination of the party with whom RBK contracted. Hughes was licensed, and Holt did not need to be licensed if all of Holt's work was performed by Hughes.

6. The trial court granted judgment for Horton in the amount he requested, i.e., the balance owed him. A subsequent order by the trial court amending the judgment to add a time/price differential on the basis of an erroneous listing of total liens claimed was not consistent with the trial court's original ruling and must be corrected.

7. The fund's subrogation rights arise from payments from the fund to claimants and does not extend to the pro-rata shares taken from the amount paid by the Verhelles to the trial court by claimants who were not fund members.

Affirmed in part, reversed in part, and remanded.

WHITE, P.J., concurring in part and dissenting in part, stated that the matter should be remanded with respect to the issue of fraudulent or forged waivers of lien to include Darling Builders Supply and Hunnicutt Plumbing & Heating in addition to RBK and Clark Foundation. Also, the fund is entitled by statute to assert a subrogation claim on the balance paid by the Verhelles to the trial court and, pursuant to statutory equal priority of lien claimants, the fund enjoys a right to that balance that is equal, and not superior, to the rights of nonmembers of the fund.

1. MECHANICS' LIENS — CONSTRUCTION LIENS — RESIDENTIAL STRUCTURES.

A lien cannot attach to a residential structure to the extent payments have been made if the owner files an affidavit with the court indi-

cating that the owner has paid the contractor, has not colluded with any person to obtain a payment from the Homeowner Construction Lien Recovery Fund, and has cooperated, and will cooperate, with the Department of Licensing and Regulation in defense of the lien fund (MCL 570.1203[1]; MSA 26.316[203][1]).

2. MECHANICS' LIENS — CONSTRUCTION LIENS — RESIDENTIAL STRUCTURES.

A person who has recorded a claim of lien on a residential structure and who is precluded from recovering a construction lien under subsection 203(1) of the Construction Lien Act may recover from the Homeowner Construction Lien Recovery Fund if the person proves, among other things, that the person would be entitled to a lien but for subsection 203(1), that the owner paid the contractor or subcontractor who retained or used the proceeds without paying the person, that the person is a member of the fund, that the person complied with any applicable licensing acts, and that the contractor or subcontractor with whom the person contracted was licensed if required by law to be licensed; if the person seeking payment from the lien fund is able to satisfy these prerequisites, the Attorney General, who defends the fund, may assert any defense to a lien claim that would have been available to the owner; one such defense is the person's failure to provide a timely notice of furnishing (MCL 570.1203[1],[3],[5]; MSA 26.316[203][1], [3],[5]).

3. MECHANICS' LIENS — CONSTRUCTION LIENS — NOTICES OF FURNISHING.

A lien claimant's failure to provide a timely notice of furnishing defeats the claimant's right to liens for work performed before the service of the notice of furnishing only to the extent that the owner made payments to the contractor pursuant to a contractor's sworn statement or a waiver of lien (MCL 570.1109[6]; MSA 26.316[109][6]).

4. MECHANICS' LIENS — CONSTRUCTION LIENS — CONTRACTORS' SWORN STATEMENTS.

A contractor's sworn statement to the owner of a structure must be dated, signed by the contractor, and notarized in order for the owner to defeat a lien claim by a subcontractor on the basis that the owner paid the contractor pursuant to a sworn statement (MCL 570.1110; MSA 26.316[110]).

5. MECHANICS' LIENS — CONSTRUCTION LIENS — FORGED WAIVERS OF LIEN.

A subcontractor does not lose rights under a lien by a purported waiver of lien where the waiver is forged (MCL 570.1109[6]; MSA 26.316[109][6]).

6. MECHANICS' LIENS — CONSTRUCTION LIENS — HOMEOWNER CONSTRUCTION
    LIEN RECOVERY FUND.

    Recovery from the Homeowner Construction Lien Recovery Fund is
    limited to members of the fund (MCL 570.1203[3][d]; MSA
    26.316[203][3][d]).

7. MECHANICS' LIENS — CONSTRUCTION LIENS — HOMEOWNER CONSTRUCTION
    LIEN RECOVERY FUND — SUBROGATION.

    The Department of Licensing and Regulation is subrogated to the
    rights of a person to whom payment from the Homeowner Con-
    struction Lien Recovery Fund is made, and the department may
    maintain any action in its own name against the contractor or sub-
    contractor who did not pay the claimant receiving payment from
    the fund (MCL 570.1205[5]; MSA 26.316[205][2]).

*David A. Williams,* for Richard and Lois Verhelle.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *R. Francis Rose,* Assistant Attorney General, for Homeowner Construction Lien Recovery Fund.

*Oade, Stroud & Kleiman, P.C.* (by *Ted W. Stroud),* for RBK Corporation and others.

*Marcoux, Allen, Abbott, Schomer & Bower, P.C.* (by *Robert T. Kendall, III,* and *Richard C. Lindsey, Jr.),* for Hart Well Drilling Co.

*Frank J. DeLuca,* for Victor Garmyn & Sons, Inc.

Before: WHITE, P.J., and SAAD and MARKEY, JJ.

SAAD, J. In this construction lien case, defendant Michigan Homeowner Construction Lien Recovery Fund appeals as of right and defendants RBK Corporation, Clark Foundation Company, Darling Builders Supply Co., Roger D. Hunnicutt, Hunnicutt Plumbing & Heating, and Stahl & Sons, Inc., (RBK et al.) cross appeal from a judgment disposing of the various parties' claims pursuant to motions for summary disposi-

tion. The principal issue in this case is whether defendant lien fund is obligated to make payments to subcontractors and suppliers[1] who were not paid by their general contractor and who are unable to foreclose on their construction liens. On summary disposition, the trial court ruled that plaintiff Randy Horton, a subcontractor, and RBK et al. were entitled to payments. We affirm in part, reverse in part, and remand for further proceedings.

I

FACTS AND PROCEEDINGS

Defendants Richard and Lois Verhelle hired defendant Daniel Hughes, a general contractor, in July 1993 to build a house. Hughes contracted with plaintiff and the other defendants (all subcontractors) to work on the project, which was completed by the end of the year. The Verhelles paid Hughes all but $31,663.30 of the contract price, which they planned to pay at the closing. The Verhelles made their payments pursuant to documents Hughes submitted to them, which purportedly were sworn statements and waivers of lien. The authenticity, accuracy, and legal effect of these documents and payments are now in dispute. Hughes did not appear for the closing and failed to pay plaintiff and the other defendants in full. Various parties, including plaintiff and RBK et al. moved for summary disposition. The court allowed the Verhelles to pay the balance due to the court and it discharged all liens against their property pursuant to MCL 570.1203(1); MSA 26.316(203)(1). It ordered the lien

---

[1] We will use the term "subcontractors" to refer to both subcontractors and suppliers.

fund to pay plaintiff and RBK et al. pursuant to MCL 570.1203(3); MSA 26.316(203)(3) and allowed the other defendants (who were not lien fund members) to recover a pro-rata share of the contract balance paid to the court.

## II

### THE SUBCONTRACTORS' RIGHTS TO RECOVER FROM THE LIEN FUND

The lien fund contends that the trial court erred in granting summary disposition to plaintiff and RBK et al. The trial court's ruling on a motion for summary disposition is reviewed de novo. *Pinckney Community Schools v Continental Casualty Co*, 213 Mich App 521, 525; 540 NW2d 748 (1995). A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. In ruling on such a motion, the trial court must consider not only the pleadings, but also depositions, affidavits, admissions, and other documentary evidence, MCR 2.116(G)(5), and must give the benefit of any reasonable doubt to the non-moving party, being liberal in finding a genuine issue of material fact. Summary disposition is appropriate only if the court is satisfied that it is impossible for the nonmoving party's claim to be supported at trial because of a deficiency that cannot be overcome. *Morganroth v Whitall*, 161 Mich App 785, 788; 411 NW2d 859 (1987).

### A

### EFFECT OF SUBCONTRACTORS' FAILURE TO FILE TIMELY NOTICES OF FURNISHING

The parties appear to agree that the liens of plaintiff and RBK et al. cannot attach to the Verhelles' property. A lien cannot attach to a residential struc-

ture to the extent payments have been made if the owner files an affidavit with the court indicating that the owner has paid the contractor, has not colluded with any person to obtain a payment from the lien fund, and has cooperated, and will cooperate, with the Department of Licensing and Regulation in defense of the lien fund. MCL 570.1203(1); MSA 26.316(203)(1). It is not contested that the Verhelles have complied with this provision. Because this provision precludes plaintiff and RBK et al. from recovering on their liens, they could recover from the lien fund if they proved, inter alia, that they would be entitled to a lien but for subsection 203(1), that the owner paid the contractor or subcontractor who retained or used the proceeds without paying them, that they were members of the fund, that they complied with any applicable licensing acts, and that the contractor or subcontractor with whom they contracted was licensed if required by law to be licensed. MCL 570.1203(3); MSA 26.316(203)(3).

If the subcontractors seeking payment from the lien fund are able to satisfy these statutory prerequisites, the Attorney General, who defends the fund, may assert any defense to a lien claim that would have been available to the owner. MCL 570.1203(5); MSA 26.316(203)(5). One available defense is the subcontractor's failure to provide a timely notice of furnishing. One of the requirements for establishing a valid lien is that a subcontractor provide a notice of furnishing to the owner or his designee and to the general contractor named in the notice of commencement within twenty days after furnishing the first labor or material on the job. MCL 570.1109(1); MSA 26.316(109)(1). Plaintiff and RBK et al. did not timely

serve their notices of furnishing. However, their failure to provide timely notices of furnishing defeats their rights to liens for work performed before the service of the notices of furnishing *only to the extent that the owner made payments to the contractor pursuant to a contractor's sworn statement or a waiver of lien.* MCL 570.1109(6); MSA 26.316(109)(6).[2] At issue is whether the Verhelles made payments pursuant to sworn statements or waivers of lien when they paid Hughes. The lien fund maintains that the owners did so, but RBK et al. contend that the purported sworn statements and waivers were legally defective and therefore cannot defeat their claims. As a matter of law, we agree with RBK et al. that payments made pursuant to defective documents would not defeat their claim. In the case of the sworn statements, we affirm summary disposition because there is no question of fact that the documents are defective. In the case of the waivers of lien, we reverse summary disposition with respect to Darling Builders Supply and Hunnicutt Plumbing & Heating because there is no question of fact that valid waivers of lien were provided. However, in the case of RBK and Clark Foundation, we remand for further proceedings to resolve the question of fact concerning the waivers' validity.

1

VALIDITY OF SWORN STATEMENTS

A sworn statement is a notarized form that lists the subcontractors, suppliers, and laborers with whom the contractor contracted, the work they provided,

---

[2] Failure to provide a timely notice of furnishing does not affect a lien claimant's right to liens for work performed after the notice is provided. MCL 570.1109(5); MSA 26.316(109)(5).

the price of their contracts, the amounts paid on the contracts, and the balance due on the contracts. MCL 570.1110(4); MSA 26.316(110)(4). The contractor must provide a sworn statement to the owner when payment is due the contractor from the owner, when the contractor requests payment from the owner, or when the owner demands a sworn statement. MCL 570.1110(1); MSA 26.316(110)(1). The subcontractor must provide a sworn statement to the contractor when payment is due the subcontractor or when the subcontractor requests payment from the contractor and must provide a sworn statement to the owner if the owner demands one. MCL 570.1110(2), (3); MSA 26.316(110)(2), (3). The statements must be in substantially the same form as outlined in the statute. That form requires that the statement be signed by the deponent (contractor or subcontractor) and notarized. MCL 570.1110(4); MSA 26.316(110)(4).

Of the $121,600 the Verhelles paid Hughes, $59,600 was paid pursuant to two contractors' sworn statements. The accuracy of those statements was suspect: they indicated that some lien claimants had been paid in full and that their total contract prices were less than the amount of their liens. More significantly, the statements were not dated, signed, or notarized. While the homeowners may be entitled to rely on false sworn statements, cf. *Renshaw v Samuels*, 117 Mich App 649, 657; 324 NW2d 117 (1982), the statements must substantially comply with the requirements of the statute. *Brown Plumbing & Heating, Inc v Homeowner Constr Lien Recovery Fund*, 442 Mich 179, 183; 500 NW2d 733 (1993). The sworn statement is essentially a form affidavit attesting to the moneys owed to and paid on contracts with sub-

contractors, suppliers, and laborers. The statements provided by Hughes were in the form prescribed by the statute but were not dated, signed, or notarized. Just as affidavits that are neither signed nor sworn are invalid, *Prussing v General Motors Corp*, 403 Mich 366, 369-370; 269 NW2d 181 (1978); *People v Burns*, 161 Mich 169, 173; 125 NW 740 (1910), we find that a contractor's statement that is neither signed nor sworn is not a "sworn" statement as required by subsection 110(4). Because the contractor did not provide the homeowners with sworn statements that substantially complied with the requirements of the statute, the homeowners' payments were not made pursuant to a contractor's sworn statement as required by the statute and thus do not affect the claimants' liens. Therefore, the payments made pursuant to these statements do not defeat the subcontractors' lien rights. The lien fund therefore cannot raise the defense that the subcontractors' claims were defeated to the extent the owners made payments pursuant to these statements.

2

VALIDITY OF WAIVERS OF LIEN

The lien fund also asserts the defense that the subcontractors' claims are defeated to the extent payments were made pursuant to a waiver of lien. MCL 570.1109(6); MSA 26.316(109)(6). The burden of proof is on the party (in this case, the lien fund) who seeks to show a valid waiver of lien. *Durant Constr, Inc v Gourley*, 125 Mich App 695, 699; 336 NW2d 856 (1983). Here, the lien fund produced uncontroverted evidence that agents of Darling Builders and Hunnicutt Plumbing & Heating executed full uncondi-

tional waivers of lien. Because those claimants waived their liens, the trial court erred in finding that they were entitled to recover from the lien fund. We reverse the trial court's judgment with respect to these two subcontractors.

The lien fund also produced evidence that agents of RBK and Clark Foundation executed full unconditional waivers of lien, but those agents submitted affidavits in which they denied having given those waivers to Hughes (and implied that they did not execute the waivers), thus creating a question of fact whether the waivers were valid. The lien fund conceded that the waivers may have been forged, but argued that the forgery did not affect the homeowners' right to rely on the waivers, which thus defeated the claimants' lien rights. There are no reported cases involving the effect of forged waivers. We find that the issue is analogous to that of the effect of forged deeds. The law is well settled that where a deed is forged, even innocent purchasers are in no better position with respect to title than if they had purchased with notice; there can be no such thing as a bona fide holder under a forgery whose good faith gives him any right against the party whose name was forged. *Horvath v Nat'l Mortgage Co*, 238 Mich 354, 360; 213 NW 202 (1927); *VanderWall v Midkiff*, 166 Mich App 668, 685; 421 NW2d 263 (1988). Just as property owners cannot lose property rights to innocent purchasers under forged deeds, we find that lienholders cannot lose lien rights to innocent homeowners under forged waivers. Accordingly, we find that if the parties dispute whether the two lien waivers were forged, that issue must be resolved by the trier of fact. If the trier of fact finds or the parties concede

that the lien waivers were forged, the waivers will not defeat RBK's and Clark Foundation's lien rights. We remand for appropriate findings of fact.

### B

#### STAHL & SONS' FAILURE TO ESTABLISH MEMBERSHIP IN LIEN FUND

The lien fund next contends that the trial court erred in granting summary disposition to defendant Stahl & Sons because it was not a member of the fund. We agree, and accordingly reverse the trial court's judgment with respect to Stahl & Sons.

As noted, a lien claimant cannot recover from the fund unless it was a fund member. MCL 570.1203(3)(d); MSA 26.316(203)(3)(d). Residential builders, residential maintenance and alteration contractors, electrical contractors, master plumbers, and mechanical contractors become fund members by paying a fee when applying for initial or renewal licenses. MCL 570.1201(1)(a); MSA 26.316(201)(1)(a). Laborers become fund members by paying a fee when they obtain a recovery from the fund. MCL 570.1201(1)(b); MSA 26.316(201)(1)(b). All other lien claimants become fund members by paying a fee "prior to the date of the lien claimant's contract for the improvement to the residential structure." MCL 570.1201(1)(c); MSA 26.316(201)(1)(c).

The lien fund produced uncontroverted evidence that Stahl & Sons had not paid the required fee for membership in the fund, although the company's owner was a fund member. The trial court apparently accepted Stahl & Sons' argument that the owner's membership constituted substantial compliance. However, the substantial compliance doctrine does

not apply to part two of the act governing recovery from the lien fund. *Brown Plumbing & Heating*, *supra* at 183. Because Stahl & Sons was the entity seeking payment from the fund and it had not joined the fund by being licensed or by paying a fee before it contracted to work on the job, it failed to prove that it had complied with § 201 as required under subsection 203(3)(d). Therefore Stahl & Sons was not entitled to recover from the lien fund and the trial court erred in concluding that it was.

### C

#### RBK'S FAILURE TO ESTABLISH CONTRACT WITH LICENSED ENTITY

The lien fund also argues that the trial court erred in granting summary disposition with respect to RBK because RBK failed to prove that it contracted with a licensed entity. We agree and remand.

As noted, a lien claimant cannot recover from the fund unless it proves that the contractor or subcontractor with whom it contracted was licensed if required by law to be licensed. MCL 570.1203(3)(h); MSA 26.316(203)(3)(h). RBK apparently did not have a written contract with Hughes. Rather, Hughes submitted a credit application to RBK so he could obtain building supplies on credit. He identified himself as the applicant, his company as Holt Building Company, and his position as president of Holt, a corporation. Holt was not a licensed residential builder, residential maintenance and alteration contractor, or residential salesperson.

By statute, a residential builder or residential maintenance and alteration contractor must be licensed. MCL 339.601(1); MSA 18.425(601)(1), MCL 339.2401 *et seq.*; MSA 18.425(2401) *et seq.* Therefore, if Holt

engaged in the construction, repair, or alteration of
residential structures, it had to be licensed. However,
if Holt engaged in repair or alteration but not
construction, it need not be licensed if the work was
"contracted for, with, or hired entirely to
be done and performed for the owner by a
person" who is licensed. MCL 339.2401(b)(ii); MSA
18.425(2401)(b)(ii). Thus, if Holt's work was done
solely by Hughes, who was licensed, Holt itself did
not have to be licensed. There remains a question of
fact with respect to whether RBK contracted with
Hughes or Holt, and the record does not indicate
whether Holt was a builder or just a maintenance and
alteration contractor. If Holt's status is the latter,
whether Hughes alone had performed Holt's work has
not been established. Therefore, the trial court erred
in granting summary disposition to RBK.

III

TIME/PRICE DIFFERENTIAL FOR HORTON

The lien fund next argues that the trial court erred
in granting judgment to plaintiff in an amount that
included a time/price differential in addition to the
balance due on his contract. We find that the judg-
ment as entered did not comport with the court's rul-
ing and must be corrected.

Plaintiff claimed a lien in the amount of $8,982.75,
representing $8,850 due on the contract plus a
$132.75 time/price differential. In his motion for sum-
mary disposition, plaintiff noted that the lien fund did
not dispute his right to recover $8,850 of his lien and
requested judgment against the lien fund in that
amount. The trial court granted the motion. The order
submitted by counsel for RBK et al. erroneously listed

the total lien claimed by Horton rather than the
$8,850 the court granted at the hearing. The trial
court is therefore instructed to amend the judgment
to reflect its ruling that plaintiff is entitled to recover
$8,850 from the lien fund.

IV

LIEN FUND'S SUBROGATION RIGHTS

Finally, the lien fund claims that the trial court
erred in allowing the lien claimants who were not
fund members to recover pro-rata shares of the
$31,663.30 paid to the court by the Verhelles. The lien
fund argues that it is entitled to that money to offset
the sums it must pay to lien claimants who are fund
members. We disagree.

If payment is made from the fund, the Department
of Licensing and Regulation "shall be subrogated to
the rights of the person to whom the payment was
made, and the department may maintain any action in
its own name against the contractor or subcontractor
who did not pay the claimant receiving payment from
the fund." MCL 570.1205(2);   MSA 26.316(205)(2).
This statute plainly provides that the department is
subrogated to the rights of the member lien claimant,
that being the only person who may obtain payment
from the fund under subsection 203(3). It does not, as
the lien fund contends, subrogate the department to
the rights of the person from whom payment is due
the contractor who did not pay the claimant, i.e., the
owner. In any event, the lien fund had not paid any
member claimants and thus had not acquired subro-
gation rights at the time the motions were heard.
Even if it had acquired those rights, the lien fund did
not plead a cause of action based on those rights.

Therefore, the lien fund's subrogation claim is without merit. Because we reject the lien fund's subrogation claim, both the lien fund's claim regarding the validity of David J. Orrison, Inc.'s and RS&B Wall Systems, Inc.'s liens and the cross appeal of RBK et al. are moot.

V

### REMAINING ISSUES

No party has directly raised the issue whether the trial court properly dismissed the Verhelles after they paid the balance due on the home to the court for distribution among non-fund members. The lien fund touched on this matter only in reference to its subrogation argument, which we have found meritless. Accordingly, we let stand the order dismissing the Verhelles. Additionally, RBK's cross appeal issue regarding reversal of this order in the event that we upset the trial court's disposition of the $31,663.30 paid to the court is moot.

### CONCLUSION

In summary, we reach the following conclusions:

We affirm the trial court's order as it relates to the Verhelles' payments pursuant to the sworn statements Hughes submitted. As a matter of law, these documents are defective, and do not defeat the subcontractors' lien rights with respect to work performed before the notices of furnishing were served. The trial court correctly determined that the subcontractors are entitled to recover from the lien fund for these payments.

We reverse the trial court's order as it relates to the payments the Verhelles made pursuant to waivers of

lien. In the case of RBK and Clark Foundation, we remand for further proceedings to resolve the question of fact regarding the validity of these documents. Additionally, on remand, the trier of fact will have to determine whether RBK contracted with a licensed entity as required by the construction lien statute. In the case of Darling Builders and Hunnicutt Plumbing & Heating, we reverse summary disposition because the lien fund proffered uncontroverted evidence of valid waivers of lien.

We reverse summary disposition for Stahl & Sons because the lien fund raised undisputed evidence that Stahl & Sons was not a lien fund member.

We instruct the trial court to amend the judgment to reflect its ruling that Horton is entitled to recover $8,850 from the lien fund.

We affirm the portion of the trial court's order denying the lien fund's claim for subrogation

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

MARKEY, J., concurred.

WHITE, P.J. (*concurring in part and dissenting in part*). I agree that the lien claimants who did not provide timely notices of furnishing are nevertheless entitled to liens for work performed before providing notice except to the extent that payments were made to the contractor pursuant to either a contractor's sworn statement or a waiver of lien. MCL 570.1109(6); MSA 26.316(109)(6).[1]

---

[1] In its brief on appeal, the lien fund argues that the untimely filing of the notices of lien bars the lien claimants from enforcing the liens, but

I also agree that there are no genuine issues of material fact concerning the validity of the contractor's statements. The statements were not dated, signed, or notarized in accordance with the statute. MCL 570.1110(4); MSA 26.316(110)(4). While homeowners are entitled by statute to rely on the sworn statements of others, MCL 570.1110(7); MSA 26.316(110)(7); *Renshaw v Samuels*, 117 Mich App 649, 657; 324 NW2d 117 (1982), the statements at issue here were not sworn statements, and thus do not operate to reduce the amount of the liens under subsection 109(6).

Regarding the lien waivers, I agree with the conclusion that forged waivers of lien cannot defeat the valid lien rights of innocent lien claimants.[2] I would,

---

does not directly address the operation of subsection 109(6). During argument, the lien fund asserted that subsection 109(6) is inapplicable and that it was not raised below. However, a review of the lien fund's brief in the circuit court reveals that the lien fund took the position that the late filing of the notices invalidated the liens "to the extent that the homeowners paid pursuant to lien waivers."

[2] I observe at this juncture that the statutory provision regarding the effect of the owner's payment to the contractor on the subcontractor's lien where the subcontractor has not provided a timely notice of furnishing, subsection 109(6), is not completely parallel to the provision regarding the effect of the homeowner's payments to a contractor on the enforceability of a construction lien on residential premises, MCL 570.1203(1); MSA 26.316(203)(1). Subsection 109(6) applies to all real property and reduces the amount of the lien to the extent payment is made pursuant to sworn statements or lien waivers. Subsection 203(1) applies only to residential structures and declares that the lien will not attach if the homeowner files an affidavit with the court stating that the homeowner has paid the contractor and the amount paid, has not colluded with anyone to obtain payment from the lien fund, and has cooperated and will continue to cooperate in the defense of the lien fund. Thus, in the instant case, unsworn statements and fraudulent lien waivers do not diminish the amount of the lien, but the homeowner nevertheless is entitled to the protection of subsection 203(1), and those lien claimants who are members of the lien fund can proceed against the fund to recover the lien amounts that are valid under subsection 109(6), but do not attach under subsection 203(1).

however, remand with respect to Darling Builders Supply Co. and Hunnicutt Plumbing & Heating as well as RBK Corporation and Clark Foundation Company. It is unclear from the record and the briefs whether Darling Builders Supply and Hunnicutt Plumbing & Heating assert that the waivers of lien pertaining to them were fraudulent. While it is correct that only RBK and Clark Foundation provided affidavits asserting that the waivers were forged, the lien fund's brief in the circuit court conceded that the lien waivers may have been forged without differentiating between the parties. On appeal, the appellees' joint brief refers to the RBK and Clark Foundation affidavits, but asserts generally that the lien waivers were fraudulent, apparently referring to all of them. Thus, I would remand for further inquiry into the validity of the waivers pertaining to all four subcontractors.

I join in the reversal with regard to Stahl & Sons, Inc., on the basis that it was not a member of the lien fund when it contracted to work on the job.[3]

I agree that there is a genuine issue of material fact concerning RBK's entitlement to recover from the fund under MCL 570.1203(3)(h); MSA 26.316(203)(h). RBK did not establish that Holt Building Company (Holt)[4] was licensed, and there is a genuine issue concerning whether RBK contracted with Daniel Hughes or Holt.[5] I note that RBK does not argue on appeal

---

[3] I reject Stahl & Sons' argument that the lien fund waived review of this issue by failing to properly identify Stahl & Sons in the fund's docketing statement, and note that Stahl & Sons has not responded to this issue on the merits.

[4] Hughes contracted with the Verhelles and the remaining parties using the name Cor-Al Construction.

[5] I recognize that RBK may not rely on the fact that Hughes was licensed to establish compliance with the statute, *Annex Constr, Inc v*

that Holt was not required to be licensed under MCL 339.2401(b); MSA 18.425(2401)(b), and I therefore do not consider the applicability of that section.[6]

I join in the majority's discussion of the time/price differential element of plaintiff's claim.

Regarding the lien fund's claim of entitlement to the $31,663.30 held by the circuit court, I do not agree that the lien fund forfeited any subrogation rights it might have by failing to pay the lien claimants before asserting those rights. I do not read § 203 as evincing a legislative intent to preclude the lien fund from disputing its liability to a lien claimant and at the same time alternatively asserting a subrogation right should the court hold it liable to the lien claimant.

Additionally, the lien fund pleaded a cause of action against Hughes asserting a right to recover all sums owed to the lien claimants. In its brief in the circuit court, the lien fund asserted that all lien claimants are entitled to equal priority under subsection 119(1) of the statute, MCL 570.1119(1); MSA 26.316(119)(1), and that the $31,663.30 should not be distributed solely to those claimants who were not members of the fund. On appeal, the lien fund asserts an entitlement to the entire sum as the subrogee of the fund-member claimants. The lien fund asserts that the sum is owed by the owner to Hughes, and by Hughes to the claimants.

I would hold that the circuit court erred in ordering that the $31,663.30 be distributed to the nonmember

_Fenech_, 191 Mich App 219; 477 NW2d 103 (1991), if, indeed, the contract was with Holt, rather than Hughes.

[6] RBK did assert in the circuit court that Holt was not required to be licensed under a different section of the statute, MCL 339.2403(e); MSA 18.425(2403)(e), but has not repeated this argument on appeal.

claimants only. The statute provides that all liens are
entitled to the same priority and that the lien fund is
subrogated to the rights of the fund members who are
paid by the fund. The lien fund was therefore subro-
gated to the fund members' claims against the
remaining $31,663.30 owed on the contract,[7] and the
sum should have been distributed pro rata between
all the lien claimants, fund members and nonfund
members. The nonmember claimants have provided
no support for their position that the $31,663.30
should be shared by them alone, other than the argu-
ment that the statute is remedial and intended to pro-
vide relief to unpaid providers of materials and labor.
However, the statute expressly states that all liens
have equal priority, and there is no reason to con-
clude that the Legislature intended that the liens of
nonmember lien claimants increase in value because
other lien claimants are fund members.

While I conclude that the circuit erred in ordering
that the nonmembers share exclusively in the
$31,663.30 and that the lien fund satisfy the fund

---

[7] If one were to conclude that the failure to pay the fund members was
fatal to the subrogation claim, the result would be the same. The fund
members themselves would be entitled to a pro-rata share of the
$31,663.30, and their claims against the lien fund would be reduced by the
sums collected. Similarly, it does not matter if the lien claimants' claims
are viewed as claims against the contractor or the homeowner. The home-
owner owed the contractor $31,663.30 under the contract, and that sum
was subject to the subcontractors' claims for payment from the contrac-
tor. The court permitted the homeowner to pay the sum to the court,
rather than the contractor as provided in subsection 203(1), but the
money was constructively the contractor's (subject to subcontractor
claims) pursuant to the contract. If the claim is viewed as one against the
homeowner for the remaining $31,663.30, then the facts must be viewed
from the standpoint of the money not having been paid to the court or the
contractor. The homeowner, then, would not be entitled to the protection
of subsection 203(1) with respect to that amount, and the lien fund mem-
bers would have no claim against the lien fund for those amounts.

member claims in their entirety, I reject the lien fund's claim to the entire $31,663.30 contract balance held by the court. The lien fund has presented no argument to support its implied claim that its rights attained through subrogation are superior, rather than equal, to the rights of the nonmember claimants.