PRUSSING v GENERAL MOTORS CORPORATION

Docket No. 58404. Argued October 6, 1977 (Calendar No. 16).—Decided August 30, 1978.

Raymond F. Prussing brought an action against General Motors Corporation for breach of an alleged oral contract of employment made when he began his employment in 1945. The Wayne Circuit Court, Joseph G. Rashid, J., found that the plaintiff was discharged for his refusal to accept a work assignment in Brazil and not because of age discrimination, and granted summary judgment and accelerated judgment for the defendant. The Court of Appeals, Bashara, P.J., and N. J. Kaufman and D. F. Walsh, JJ., affirmed in a per curiam opinion (Docket No. 24903). Plaintiff appeals. *Held:*

If the Court were to hold that an employer cannot terminate a long-term employment contract without cause, the plaintiff's affidavit, on its face, would present a genuine issue of material fact on the issue whether there was cause to terminate his employment. The question, however, cannot be reached and decided because the trial judge found, on an adequate record, that the affidavit submitted in the plaintiff's behalf was not signed by him. The plaintiff, thus, failed to file an opposing affidavit or present other proof as required by the court rule. In that posture there was only the affidavit in behalf of the defendant to the effect that the plaintiff was discharged for failing to accept a work assignment which, without any rebuttal, would be regarded as discharge for cause. The plaintiff's belated attempt to file an affidavit was in such form and manner that the judge's failure to treat it as a timely opposing affidavit was not an abuse of discretion.

Affirmed.

*Haynes & Donnelly, P.C.,* for plaintiff.

*Bodman, Longley, Bogle & Dahling* (by *Theodore Souris)* for defendant.

PER CURIAM. We granted leave to appeal to

consider whether the common law should be changed to preclude an employer from terminating long-term employment without cause even though the employment is at will or the contract of employment otherwise provides. It now appears that we cannot reach that issue.

Prussing first went to work for General Motors when he was 23. At the termination of his employment he had an executive position with General Motors Overseas Operations in New York City. In 1974, at the age of 52, he was discharged when he refused to accept an assignment in Brazil.

The complaint alleged that he was discharged without cause because of his age and reluctance to transfer to another country which he claimed was due to his and his wife's poor health. He further alleged that because of the "substantial longevity of employment", and "the evolution of the modern employer-employee relationship, General Motors had a duty to deal with" him in good faith and fairly in deciding whether to exercise "its right to continue or terminate the employment". He contended that the discharge was in violation of that duty and contrary to the employment relationship inasmuch as he had been led to believe that he would be employed by General Motors until the normal retirement age of 65 and would be terminated earlier only for "just cause".

General Motors answered that the written employment contract with Prussing provided that his employment was "from month to month only on a calendar month basis" and that "there are no other arrangements, agreements, or understandings, verbal or in writing". It alleged that on January 1, 1974 he was assigned to General Motors do Brasil, S.A., at an increased salary, an assignment which he accepted but later refused,

whereupon his employment was terminated for cause effective April 30, 1974. Prussing received severance pay and is entitled to a monthly retirement benefit when he reaches 65.

General Motors moved for accelerated judgment and summary judgment on the ground that, among others, there is no genuine issue of material fact[1] on the issue of whether Prussing was discharged because he refused to perform the duties assigned to him. Prussing's counsel filed an affidavit purporting to be Prussing's which stated that he refused to move his family to Brazil because of his "wife's critical health", her impending surgery and his health, and that "the 'Brazilian offer' was no offer at all" but merely a pretext to allow General Motors to breach the contract of employment.

In *Monge v Beebe Rubber Co,* 114 NH 130; 316 A2d 549 (1974), the Supreme Court of New Hampshire held that the employer there was not free to discharge an employee serving under an at-will employment contract where it appeared that the employee had been harassed by her foreman because she refused to go out with him and that his hostility, condoned if not shared by defendant's personnel manager, ultimately resulted in her being fired.[2]

---

[1] GCR 1963, 117.2(3).

[2] The New Hampshire Supreme Court said that plaintiff sued for breach of an employment contract for an indefinite period of time. Employers, said the court, have "long ruled the workplace with an iron hand by reason of the prevailing common-law rule that such a hiring is presumed to be at will and terminable at any time by either party". There was need, said the court, to re-examine the law of employer-employee relationships, as recently done in the case of tenancies-at-will of real property. In this relationship also there had been "changing legal, social and economic conditions". "Although many of these changes have resulted from the activity and influence of labor unions, the courts cannot ignore the new climate prevailing generally in the relationship of employer and employee."

The court concluded:

"In all employment contracts, whether at will or for a definite

General Motors distinguishes *Monge* on the ground that there the employee refused "to do that which public policy forbids or condemns".[3]

If we were to hold that *Monge* should not be so limited and that an employer cannot terminate a long-term employment contract without cause, Prussing's affidavit would present a genuine issue of material fact on the issue of whether there was cause to terminate his employment. We cannot, however, reach and decide the question whether the common-law rule should be changed because the trial judge found, on an adequate record, that the affidavit submitted in Prussing's behalf was

---

term, the employer's interest in running his business as he sees fit must be balanced against the interest of the employee in maintaining his employment, and the public's interest in maintaining a proper balance between the two. [Citation omitted.] We hold that a termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract. [Citations omitted.] Such a rule affords the employee a certain stability of employment and does not interfere with the employer's normal exercise of his right to discharge, which is necessary to permit him to operate his business efficiently and profitably." *Monge v Beebe Rubber Co,* 114 NH 130, 133; 316 A2d 549, 551-552 (1974) (emphasis supplied).

Similarly, see *Foley v Community Oil Co, Inc,* 64 FRD 561 (D NH, 1974); *Geary v United States Steel Corp,* 456 Pa 171; 319 A2d 174 (1974) (Roberts, J., dissenting); Blades, *Employment at Will vs Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum L Rev 1404, 1418 (1967); Note, *Implied Contract Rights to Job Security,* 26 Stanford L Rev 335 (1974); Note, *Employment at Will and the Law of Contracts,* 23 Buffalo L Rev 211 (1973); Note, *Job Security and Unfair Dismissal,* 38 The Modern L Rev 292 (1975).

[3] General Motors asserts that the exception to the common law rule permitting an employer to terminate an at-will employment contract without cause has been recognized only in cases in which

"the employee is discharged for doing that which public policy encourages or for refusing to do that which public policy forbids or condemns. See, for example, *Petermann v International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 396,* 174 Cal App 2d 184; 344 P2d 25 (1959), refusal to commit perjury before legislative committee; *Frampton v Central Indiana Gas Co,* 260 Ind 249; 297 NE2d 425 (1973), filing a workmen's compensation claim against employer; and *Nees v Hocks,* 272 Or 210; 536 P2d 512 (1975), refusal to request release from jury duty."

not signed by him. Prussing, thus, failed to file an opposing affidavit or present other proof as required by the court rule. In that posture there was only the affidavit in behalf of General Motors to the effect that Prussing was discharged for failing to accept a work assignment which, without any rebuttal, would be regarded as cause for discharge.

Prussing's belated attempt to file an affidavit in opposition was in such form and manner that the judge's failure to treat it as a timely opposing affidavit was not an abuse of discretion.

Affirmed.

KAVANAGH, C.J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.