Mary McCORMICK, Plaintiff,

v.

SEARS, ROEBUCK AND CO., a foreign
corporation, Defendant.

No. L88-20-CA5.

United States District Court,
W.D. Michigan, S.D.

May 4, 1989.

Cassius E. Street, Jr., Lansing, Mich., for plaintiff.

Charles C. DeWitt, Jr., Detroit, Mich., for defendant.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

This action grows out of plaintiff's discharge from employment with defendant, Sears, Roebuck and Co. In a three-count complaint, plaintiff alleges (1) that her discharge was in breach of her employment contract; (2) that defendant breached its implied duty of good faith; and (3) that defendant committed the tort of fraudulent misrepresentation. Now before the Court are two motions. Defendant moves the Court for summary judgment on all three of plaintiff's present claims. Plaintiff seeks leave to amend the complaint so as to add a claim of gender-based discrimination.

It appears plaintiff Mary McCormick's employment with defendant commenced in September, 1975. She was hired as a part-time floral arranger/salesperson at defendant's Lansing, Michigan store. The employment application which she had signed and submitted provided in pertinent part:

> In consideration of my employment, I agree to conform to the rules and regulations of Sears, Roebuck and Co., and my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or myself. I understand that no store manager or representative of Sears, Roebuck and Co., other than the president or vice-president of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.

Plaintiff continued working part-time for about two years before accepting a full-time sales position in the paint and electrical department. She continued in this capacity until October, 1984, when she reluctantly accepted the invitation of personnel manager, "Mr. Sparks," to transfer to a commission sales position in the major appliances department. During the next three years, plaintiff's performance was somewhat inconsistent, but in general, she failed to meet departmental average performance standards in "sales per hour" and in "maintenance agreement sales percentage." She was given notices of deficiencies and orders to improve in July, August and September of 1987, but failed to show the required improvement. On October 12, 1987, plaintiff was discharged from employment.

Defendant's motion for summary judgment asks the Court to evaluate the factual support for plaintiff's claims. The Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If defendant carries its burden of showing there is an absence of evidence to support a claim, then plaintiff must demonstrate by affida-

vits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury can return a verdict for plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of plaintiff's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## I. WRONGFUL DISCHARGE

■ Michigan law, applicable in this diversity action, continues to recognize the general rule that employment for an indefinite term is terminable at will; that is, terminable by either party at any time for any or no reason. *Suchodolski v. Michigan Consolidated Gas Co.*, 412 Mich. 692, 694–95, 316 N.W.2d 710 (1982). This rule may be altered by agreement of the parties, express or implied. *Valentine v. General American Credit, Inc.*, 420 Mich. 256, 258–59, 362 N.W.2d 628 (1984); *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). Here, the rule is expressly memorialized in plaintiff's employment application by language reflecting the parties' understanding that plaintiff's employment was terminable "with or without cause." This language notwithstanding, plaintiff contends a contrary agreement was formed, to the effect that she would not be discharged except for good cause.

This contrary agreement is said to have arisen from three sources. First, plaintiff points to provisions in the employee handbook, "Getting Acquainted with Sears," including (1) a statement of defendant's wish to treat people fairly; (2) a statement that opportunity for advancement is dependent on "doing well on your present job;" and

(3) a list of rule violations which may result in termination.

The Court acknowledges that employer statements of policy can give rise to contractual rights even though not expressly made a part of the employment contract. *Toussaint, supra*, 408 Mich. at 614–15, 292 N.W.2d 880. The *Toussaint* ruling, however, is premised upon an employment contract indefinite as to duration and grounds for termination. Under such circumstances, the court held, expression of a company policy not to discharge employees except for cause could give rise to a legitimate, enforceable expectation of job security. Here, the employment application, representing the only written contract, clearly provides the relationship is terminable at will. Further, unlike the policy considered in *Toussaint*, the Sears employee handbook does not contain any express assurance that employees will be discharged only for good cause. The Court is asked to find such a promise *implied* by provisions which evince a general intent to treat employees fairly, even though such promise would directly contradict the clear and unequivocal language of plaintiff's employment application.

Precisely the same argument, involving the same employment application and the same employee handbook, was flatly rejected in *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460–61 (6th Cir.1986). The *Reid* court upheld the employment application as binding:

> Though *Toussaint* holds that there may be an implied contract that employment may be terminated only for good cause, it does not hold that this may be the case where an express contract makes the term of employment at will. It is well settled in Michigan that there cannot be an implied contract covering the same subject as an express one.

790 F.2d at 462. This reasoning has been consistently followed in the Sixth Circuit. *Pratt v. Brown Machine Co.*, 855 F.2d 1225, 1233–34 (6th Cir.1988); *Taylor v. General Motors Corp.*, 826 F.2d 452, 457 (6th Cir.1987); *Dell v. Montgomery Ward*

*and Co., Inc.,* 811 F.2d 970, 974 (6th Cir. 1987).

The *Reid* case is, on this point, indistinguishable from the present case and must be followed.[1] Plaintiff's claim that an implied agreement not to discharge except for cause arose from the employee handbook does not present a genuine issue of material fact and is rejected.

■ A second asserted basis for plaintiff's expectation is her observation of defendant's treatment of other employees. She contends it was defendant's practice to reassign to other departments employees who were not performing satisfactorily and to discharge only those who had committed gross misconduct, such as theft.

Again, there is support for plaintiff's position. In *Schwartz v. Michigan Sugar Co.,* 106 Mich.App. 471, 477, 308 N.W.2d 459 (1981), the court held "an employer's conduct and other pertinent circumstances may establish an unwritten 'common law' providing the equivalent of a just cause termination policy." See also *Wiskotoni v. Michigan National Bank,* 716 F.2d 378, 385 (6th Cir.1983). As noted in *Schwartz,* however, "a mere subjective expectancy" on the part of an employee will not create a legitimate claim to continued employment. 106 Mich.App. at 478, 308 N.W.2d 459. There must be a "common understanding or mutual intent to contract that employment be continuing but for cause." *Id.* In order to find such an obligation implied in fact, it must be based on the *agreement* of the parties. *Valentine, supra,* 420 Mich. at 259, 362 N.W.2d 628.

Here, considering the clear "at will" language of the employment application and the absence of any clear "for cause only" representation from defendant, in a policy statement or otherwise, plaintiff's observation of other employees' experience can support only a subjective expectancy.[2] There simply is no evidence of a *common*

understanding or *mutual* intent that plaintiff could be discharged only for cause. Plaintiff's observation of defendant's past practice is insufficient to create a genuine fact issue regarding the legitimacy of her expectation of continued employment.

■ Third, plaintiff relies on certain oral representations made to her by personnel manager Sparks upon transferring to the major appliances department. According to her deposition testimony, plaintiff made this decision reluctantly. She had been comfortable in the paint and electrical department and was content with her salary. She believed commission selling was "a precarious situation" and represented a risk she did not need to undertake. She initially declined Sparks' invitation to transfer. In response to her apprehensions, she says, Sparks assured her (a) the offer was extended to her because she was viewed as an exceptional employee who would do well in the position; (b) that transfer would be wise because management was contemplating elimination of her full-time position in paint and electrical within a year; and (c) that if her performance were unsatisfactory, another position, probably in a different commission sales department, would be found for her. Plaintiff was persuaded by these representations to accept the transfer.

Defendant does not refute that these representations were made, but contends they are not legally significant. The representations were not made by the company president or vice-president. Therefore, defendant asserts, pointing again to the employment application language, *supra,* at p. 1285, Sparks' statements could not support a *legitimate* expectation that the at-will status of plaintiff's employment had been altered.

Defendant's position was accepted, as persuasive in *Eliel v. Sears, Roebuck & Co.,* 150 Mich.App. 137, 140, 387 N.W.2d 842 (1985), and *Reid, supra,* 790 F.2d at

---

**1.** To the extent that *Dalton v. Herbruck Egg Sales,* 164 Mich.App. 543, 547, 417 N.W.2d 496 (1987), reaches a different conclusion, it is disregarded as anomalous, consistent with *Pratt v. Brown Machine Co.,* 855 F.2d 1225, 1234 n. 11 (6th Cir.1988).

**2.** The significance of oral representations made by personnel manager "Mr. Sparks" is discussed at greater length, *infra.*

460, 461. Both decisions hold that statements made by Sears representatives who were not the company president or vice president were ineffective to establish a contract to discharge for cause only. This rule is unquestionably sound and should generally be followed.

However, this Court is not unsympathetic with plaintiff's promissory estoppel theory of relief. In *Schipani v. Ford Motor Co.*, 102 Mich.App. 606, 614, 302 N.W.2d 307 (1981), the court recognized that, under appropriate circumstances, oral promises may be enforceable notwithstanding contrary written terms. The court defined the elements of promissory estoppel as:

> (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promise; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided.

102 Mich.App. at 612–83, 302 N.W.2d 307.

Here, in response to plaintiff's specific question about job security, Sparks specifically assured that she would not be discharged solely because her sales performance was unsatisfactory; in this eventuality, she would be transferred. This is not a promise that plaintiff would not be discharged except for cause, but a restriction *in one particular* of defendant's freedom to terminate at will. Sparks obviously made the statement with the intent of inducing plaintiff's reliance. Although Sparks was not the company president or vice-president, there appears to be a question of fact as to whether he spoke with apparent authority.[3] The extent to which plaintiff did in fact rely on Sparks' assurance also presents a question of fact.[4]

Plaintiff's case falls short, however, in that her reliance can not be construed as "definite and substantial" in character. Plaintiff gave up one full-time position,

which then appeared to have a continuing life span of one year or less, for a better paying full-time position which lasted three years. In *Schipani*, definite and substantial reliance was deemed to exist where an employee gave up former employment with attendant retirement benefits or with the security of a union in order to accept a new position. 102 Mich.App. at 615, 302 N.W.2d 307. Plaintiff gave up no such benefit in this case. In fact, even apart from Sparks' illusory assurance of a transfer if things did not work out in the appliances department, she gained the additional benefit of continued employment with higher wages. Accepting and continuing employment is not sufficiently substantial reliance to support a promissory estoppel theory. *Dumas v. Auto Club Ins. Ass'n*, 168 Mich. App. 619, 639, 425 N.W.2d 480 (1988).

In the absence of evidence to support this essential element of plaintiff's promissory estoppel theory, the Court is constrained to follow the rule established in *Eliel* and *Reid, supra*. In the face of the clear language of the employment application, Sparks' oral representations were ineffective as a matter of law to alter the at-will status of the employment relationship.

The Court thus concludes that none of plaintiff's three asserted bases for finding an implied contract is sufficient to create a genuine issue of material fact. Defendant is entitled to summary judgment on plaintiff's wrongful discharge claim.

## II. BREACH OF IMPLIED DUTY OF GOOD FAITH

Plaintiff alleges in count II that her discharge constitutes a breach of the implied covenant of good faith and fair dealing. This claim is brought notwithstanding Michigan's general rule that employment for an indefinite term is terminable at any

---

**3.** The "Getting Acquainted with Sears" employee handbook expressly refers employees to their Unit Manager for specific information regarding company policies treated only generally in the handbook.

**4.** Plaintiff's deposition testimony suggests her decision was based at least in part upon her impression that the imminent elimination of her position in paint and electrical left her little choice.

time for any or no reason unless the parties agree otherwise.

The legal protection of employee interests in job security is the exception, rather than the rule, in this state. In the absence of a contractual agreement to the contrary, see, e.g., *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), and of unlawful reasons for discharge such as race or sex discrimination, private sector employees are terminable at the will of their employers. *Michigan State Employees Ass'n v. Dep't of Mental Health,* 421 Mich. 152, 158, 365 N.W.2d 93 (1984). In other words, Michigan law does not recognize the existence of an implied covenant of good faith and fair dealing in the employment arena.

Plaintiff's argument that the question was left open in *Prussing v. General Motors Corp.,* 403 Mich. 366, 269 N.W.2d 181 (1978), is not persuasive. In *Prussing,* the Supreme Court expressly declined to rule on whether the established common law rule should be changed. 403 Mich. at 369, 269 N.W.2d 181. Subsequently, the Michigan Court of Appeals, noting *Prussing,* has consistently upheld the established rule, stating that such a radical departure from the common law and Michigan precedent should come only from the Supreme Court. *Dahlman v. Oakland University,* 172 Mich.App. 502, 507, 432 N.W.2d 304 (1988); *Cockels v. Int'l Business Expositions, Inc.,* 159 Mich.App. 30, 37, 406 N.W.2d 465 (1987); *Schwartz v. Michigan Sugar Co.,* 106 Mich.App. 471, 481, 308 N.W.2d 459 (1981), *leave denied,* 414 Mich. 870 (1982).

This Court is obliged, in this diversity action, to interpret and apply Michigan's existing substantive law. It is not for this Court to create new law or extend the old. Michigan law does not currently recognize the existence of the implied covenant urged upon the Court by plaintiff. Accordingly, the claim stated in count II must be dismissed.

### III. FRAUDULENT MISREPRESENTATION

▆ Plaintiff alleges in count III that defendant is liable in tort for the damages caused when she lost her employment after relying on defendant's "misrepresentations." This, in effect, is a restatement in tort of the breach of contract claim embodied in count I. Plaintiff alleges defendant's policy statements, past practices and oral representations, all discussed *supra,* constitute fraudulent misrepresentations. The claim is defective.

The elements of the alleged tort are summarized in *Hi–Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813 (1976):

The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

The burden rests with plaintiff to prove each of these elements by clear, satisfactory and convincing evidence. *Id.*

An action for fraudulent misrepresentation must normally be predicated upon a statement relating to a past or existing fact; future promises are contractual and do not constitute fraud. *Id.* Here, all of the misrepresentations relied upon are contractual future promises. They may constitute fraud only if made in bad faith without present intention of performance. *Id.,* 398 Mich. at 337–38, 247 N.W.2d 813. Plaintiff has presented no evidence that any of the cited representations was made in bad faith. The only representation which arguably constitutes an unfulfilled promise is Sparks' assurance that plaintiff would be transferred if her performance in the appliance department proved unsatisfactory. There is no evidence that Sparks did not mean what he said at the time of his "promise," three years before plaintiff's discharge.

This total absence of evidence regarding an essential element of the claim renders

all other potential fact questions immaterial and is fatal to the claim. See *Celotex v. Catrett, supra*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Defendant is therefore entitled to summary judgment as to the fraud claim contained in Count III.

## IV. LEAVE TO AMEND

■ Plaintiff has moved the Court for leave to amend the complaint so as to add a fourth count. The motion should be freely granted when justice so requires. Fed.R. Civ.P. 15(a). The proposed fourth count contains claims for sex-based discrimination under Michigan's Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*, and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. In determining whether justice requires that leave to amend be granted at this late stage, the Court considers the elements of the proposed claims.

The elements of both claims are substantially identical. *Grubb v. W.A. Foote Memorial Hospital, Inc.*, 741 F.2d 1486, 1493 (6th Cir.1984). These standards have been well-defined in the case law and are applied through a tripartite burden-allocation scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Under this scheme, it is initially incumbent upon plaintiff to come forward with a prima facie case of discrimination. In the context of a discriminatory discharge claim, a prima facie case consists of three basic elements: plaintiff must show (1) that she is a member of a protected class; (2) that she was discharged without valid cause; and (3) that her position was filled by a non-member of the protected class, or that the employer continued to seek applications from persons of plaintiff's qualifications, or that similarly situated employees with comparable work records were treated more favorably than plaintiff. *Shah v. General Electric Co.*, 816 F.2d 264, 268–71 (6th Cir.1987). The essence of the disparate treatment claim is the charge that an employer simply treats some people less favorably *because of* their race, color, sex or national origin. *Id*, at 268. Accordingly, the third required element of the prima

facie case is designed to elicit indirect evidence from which an inference of discriminatory motive may be drawn. *Id.*

In measuring plaintiff's proposed claims against these standards, the Court is fully cognizant of the fact that the parties' discovery has not been directed toward proof or disproof of a discrimination claim. Nonetheless, it is apparent that certain undisputed facts preclude any possibility that plaintiff could carry her prima facie case burden even if leave to amend were granted.

Assume, for present purposes, that plaintiff could satisfy the first two elements of the prima facie case. Since the record is devoid of *direct* evidence of discriminatory motive and plaintiff's deposition testimony does not even reveal suspicion that she was the victim of discrimination, it is clear that plaintiff would have to satisfy the third element by presenting indirect evidence which gives rise to an inference of discriminatory motive. Yet, the facts of this case militate directly against such an inference. It is undisputed that, after her discharge, plaintiff's position was filled by another woman. It is also undisputed that the male employees in the appliance department who were not discharged all had superior sales performance records. There is no evidence or even an offer of evidence which would support an inference that plaintiff was discharged because she is female. Thus, it appears plaintiff could not even establish a prima facie case of discrimination.

Under these circumstances, granting leave to amend would serve no useful purpose. It is well-settled that leave to amend is properly denied where the proposed complaint would not withstand a motion to dismiss. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 268 (6th Cir. 1986). Since justice would not be well served by granting leave to amend, plaintiff's motion must be denied.

## V. CONCLUSION

Based on the foregoing, the Court finds that defendant's motion for summary judgment must be granted and plaintiff's mo-

tion for leave to amend the complaint must be denied.[5] An order consistent with this Opinion shall issue forthwith.

**5.** Defendant's motion for sanctions under Fed. R.Civ.P. 11 (contained within the body of its brief in support of motion for summary judgment) deserves only passing mention. Due to the closeness of the legal questions involved herein, the Court cannot find that plaintiff's defense of the motion for summary judgment was not made in good faith or not warranted by existing law. Imposition of sanctions would be clearly inappropriate.