# STATE OF MICHIGAN

# COURT OF APPEALS

CARRIE S. FLANAGIN,

Plaintiff-Appellee,

FOR PUBLICATION
May 23, 2017
9:05 a.m.

v

No. 330887
Kalkaska Circuit Court
LC No. 14-011619-NI

KALKASKA COUNTY ROAD COMMISSION,

Defendant-Appellant,

and

ANDREW HENRY SCHLAGEL,

Defendant.

Before: CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

The central issue in this case is whether a county road commission is immune from suit for an accident caused by a county snowplow that is operating on the wrong side of the road. We conclude that, while the motor vehicle code does authorize a plow truck to be operated in the opposing traffic lane, doing so may nevertheless present a situation in which the plow truck is being negligently operated and, in such cases, the resulting motor vehicle accident falls outside the scope of governmental immunity.

Defendant Kalkaska County Road Commission (defendant) appeals from an order of the circuit court denying its motion for summary disposition under MCR 2.116(C)(7) based on governmental immunity. On appeal, defendant argues that it is immune from suit because (1) MCL 257.603 and 257.634 authorizes a snowplow to cross the centerline of a road and (2) even if those statutes are inapplicable, plaintiff failed to establish a genuine issue of material fact that the plow truck was operated negligently and that this accident fell within the motor vehicle exception to governmental immunity, MCL 691.1405. We disagree and affirm. We review de novo the trial court's decision on a motion for summary disposition, *Oliver v Smith*, 290 Mich App 678, 683; 810 NW2d 57 (2010), the issue of whether immunity applies, *Co Rd Ass'n of Mich v Governor*, 287 Mich App 95, 118; 782 NW2d 784 (2010), and issues of statutory interpretation, *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003).

-1-

Plaintiff's suit alleges that she was injured when the vehicle she was driving collided with a plow truck operated by defendant Schlagel, who was subsequently dismissed from the suit, in the course of his employment with defendant. Plaintiff alleges that the accident occurred because Schlagel was driving too fast for the conditions and crossed the centerline of the road. Schlagel denies that he crossed the centerline and it is defendant's position that the accident was caused when plaintiff herself crossed the centerline. The issue of which vehicle crossed the centerline is relevant to the second issue on appeal (whether the motor vehicle exception to governmental immunity applies). But, for purposes of resolving the first issue, the applicability and effect of MCL 257.603 and 257.634, we will assume that it was the plow truck that crossed the centerline.

MCL 257.603 provides as follows:

(1) The provisions of this chapter applicable to the drivers of vehicles upon the highway apply to the drivers of all vehicles owned or operated by the United States, this state, or a county, city, township, village, district, or any other political subdivision of the state, subject to the specific exceptions set forth in this chapter with reference to authorized emergency vehicles.

(2) The driver of an authorized emergency vehicle when responding to an emergency call, but not while returning from an emergency call, or when pursuing or apprehending a person who has violated or is violating the law or is charged with or suspected of violating the law may exercise the privileges set forth in this section, subject to the conditions of this section.

(3) The driver of an authorized emergency vehicle may do any of the following:

(a) Park or stand, irrespective of this act.

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.

(c) Exceed the prima facie speed limits so long as he or she does not endanger life or property.

(d) Disregard regulations governing direction of movement or turning in a specified direction.

(4) The exemptions granted in this section to an authorized emergency vehicle apply only when the driver of the vehicle while in motion sounds an audible signal by bell, siren, air horn, or exhaust whistle as may be reasonably necessary, except as provided in subsection (5), and when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating, or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet in a 360 degree arc unless it is not advisable to equip a police vehicle operating as

an authorized emergency vehicle with a flashing, oscillating or rotating light visible in a 360 degree arc. In those cases, a police vehicle shall display a flashing, oscillating, or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet to the front of the vehicle. Only police vehicles that are publicly owned shall be equipped with a flashing, oscillating, or rotating blue light that when activated is visible under normal atmospheric conditions from a distance of 500 feet in a 360 degree arc.

(5) A police vehicle shall retain the exemptions granted in this section to an authorized emergency vehicle without sounding an audible signal if the police vehicle is engaged in an emergency run in which silence is required.

(6) The exemptions provided for by this section apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon the surface of a highway but do not apply to those persons and vehicles when traveling to or from work. The provisions of this chapter governing the size and width of vehicles do not apply to vehicles owned by public highway authorities when the vehicles are proceeding to or from work on public highways.

MCL 257.634(1) provides as follows:

(1) Upon each roadway of sufficient width, the driver of a vehicle shall drive the vehicle upon the right half of the roadway, except as follows:

(a) When overtaking and passing another vehicle proceeding in the same direction under the rules governing that movement.

(b) When the right half of a roadway is closed to traffic while under construction or repair or when an obstruction exists making it necessary to drive to the left of the center of the highway. A driver who is driving on the left half of a roadway under this subdivision shall yield the right-of-way to an oncoming vehicle traveling in the proper direction upon the unobstructed portion of the roadway.

(c) When a vehicle operated by a state agency or a local authority or an agent of a state agency or local authority is engaged in work on the roadway.

(d) Upon a roadway divided into 3 marked lanes for traffic under the rules applicable on the roadway.

We agree that the effect of MCL 257.603(6) and 257.634(1)(c) is that a plow truck operator is not necessarily committing a moving violation by driving across the centerline while plowing the

road.[1]  But that does not lead to the conclusion that the driver is never negligent in such a situation and, therefore, cannot be liable for a resulting accident.

It is well established that MCL 257.603, while excusing certain drivers from obeying many "rules of the road," must nevertheless do so in a manner that does not endanger life or property.  Such drivers must drive "with due regard for the safety of others." *Fiser v Ann Arbor*, 417 Mich 461, 472-473; 339 NW2d 413 (1983), overruled on other grounds by *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000).  See also *Kalamazoo v Priest*, 331 Mich 43, 46-47; 49 NW2d 52 (1951); *McKay v Hargis*, 351 Mich 409; 88 NW2d 456 (1958).  As these cases point out, the Legislature has expressed its intent that, while drivers are excused from following the "rules of the road" under certain circumstances, they must do so in a reasonable manner that looks out for the safety of others on the road.  Indeed, it is within the common experience of any driver who has encountered an emergency vehicle on the road:  police cars, ambulances and fire trucks proceeding with lights and sirens and, while they may proceed through a red light, they do so only after slowing and ensuring that any cross-traffic has observed them and stopped.  The same can be said when those vehicles need to cross the centerline of the road—they do so only after ensuring that it is, in fact, safe to do so.

And the fact that this case involves a plow truck instead of an authorized emergency vehicle does not change the result.  While these earlier cases did deal with police vehicles, we hardly think that the Legislature intended to give greater ability to road work vehicles to disregard the rules of the road and the safety of others while engaged in road work than what it granted to emergency vehicles responding to an emergency.  That is, if a police officer chasing a suspect, a fire truck going to a fire, or ambulance rushing a critical patient to the hospital is expected to nevertheless give due regard for the safety of others on the road, then certainly so must a plow truck.

In sum, we view these statutes as not establishing a sort of immunity from suit or an excuse to be negligent.  Rather, they merely recognize that drivers, under the covered circumstances, are not violating these particular provisions of the motor vehicle code.  Its applicability to a subsequent lawsuit arising out of a collision involving one of these vehicles is minimal.  It might lead to the conclusion that a plaintiff could not successfully base on argument on negligence per se for the violation (because there would be no violation), but it would not lead to the conclusion that the operator of the emergency or road work vehicle cannot be considered negligent because the operator did not have to follow the rules of the road.

---

[1] Arguably, MCL 257.634(1)(c) only applies to drivers who encounter work vehicles on a roadway, not to the operators of the work vehicles themselves.  Because we conclude that this statute does not excuse a driver of a work vehicle from operating with due regard for the safety of others, we need not resolve that question.  For purposes of this appeal, we will assume, without deciding, that MCL 257.634(1)(c) does apply to the plow truck and its operator.

Thus, the real question in this case is whether there is a genuine issue of material fact that the plow truck was being operated negligently and, thus, this case comes under the motor vehicle exception to governmental immunity. Defendant contends that it was entitled to summary disposition because (1) the submissions upon which plaintiff relies were untimely and (2) even if not untimely, they do not establish a genuine issue of material fact. We disagree.

At issue are the so-called Petersen affidavit and the Meyers crash report. The Meyers crash report was not submitted with plaintiff's primary response to defendant commission's motion, and the first version of the Petersen affidavit attached to plaintiff's response to the summary disposition motion was unsigned and unsworn. See *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 120; 839 NW2d 223 (2013) (holding that an unsworn, unsigned affidavit cannot be considered on a motion for summary disposition).

A court has discretion to consider late filed documents. See *Prussing v Gen Motors Corp*, 403 Mich 366, 370; 269 NW2d 181 (1978).[2] And, as the problem with the first Peterson affidavit was that it was not properly executed, not that it was untimely or irrelevant, the court's decision to consider it was not outside the range of principled outcomes. See *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006).

Regardless, defendant contends that the second Petersen affidavit and the Meyers report do not generate an issue of material fact because the snowplow could legally cross the centerline. This argument is premised on the assumption that MCL 257.603 or MCL 257.634(1)(c) effectively granted defendant immunity, and, as discussed above, that argument lacks merit.

Defendant also asserts that Petersen and Meyers contradict each other as to the extent to which it was possible to reconstruct the accident. But that discrepancy has no bearing on whether there is a genuine issue of fact. It would be for a trier of fact to consider how any such discrepancy impacted the weight to be given the opinions, if indeed both were presented to the trier of fact.

The Meyers report concluded that the snowplow was four to six feet over the centerline at the time of crash. And Petersen averred that his analysis of the evidence suggested the snowplow was not in its lane of travel. While defendant could legally operate the snowplow over the centerline pursuant to statute, the statutory exemptions do not relieve the driver of performing his or her work in a non-negligent manner. Here, the degree to which the snowplow allegedly crossed the centerline and whether doing so was proper in light of the driver's ability to see oncoming traffic because of variables like the weather and the curve in the roadway, could allow a reasonable jury to conclude that the snowplow was negligently operated at the time of

---

[2] In *Prussing*, the Court held that a trial court did not abuse its discretion by failing to consider an untimely affidavit. *Prussing*, 403 Mich at 370. The reference to a court not having abused its discretion implies the existence of discretion.

the accident. Thus, the trial court correctly concluded that summary disposition was not appropriate.

Affirmed. Plaintiff may tax costs.

/s/ Mark J. Cavanagh
/s/ David H. Sawyer
/s/ Deborah A. Servitto