*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAPLE MANOR REHAB CENTER OF NOVI,
MAPLE MANOR NEURO CENTER, INC., JOSE S.
EVANGELISTA III, LIVONIA DIAGNOSTIC
CENTER, A. PETER EVANGELISTA, and
ADVANCE WOUND CARE & HYPERBARIC
MEDICINE OF MICHIGAN, INC., as assignees of
PAUL HOLDERNESS,

UNPUBLISHED
July 27, 2023

Plaintiffs-Appellants,

v

No. 360281
Oakland Circuit Court
LC No. 2020-180088-NF

SAFECO INSURANCE COMPANY and LIBERTY
MUTUAL INSURANCE COMPANY,

Defendants-Appellees.

Before: GADOLA, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In this action to recover first-party no-fault personal protection insurance (PPI) benefits, plaintiffs appeal by delayed leave granted[1] the trial court's order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). We affirm in part, reverse in part, and remand for additional proceedings.

## I. BACKGROUND

---

[1] *Maple Manor Rehab Ctr of Novi v Safeco Ins Co*, unpublished order of the Court of Appeals, entered June 29, 2022 (Docket No. 360381). Plaintiffs initially attempted to appeal the summary disposition order as of right, but their claim of appeal was dismissed for lack of jurisdiction because it was not timely filed. *Maple Manor Rehab Ctr of Novi v Safeco Ins Co*, unpublished order of the Court of Appeals, entered November 23, 2021 (Docket No. 359142).

Defendant Safeco Insurance Company (Safeco)[2] issued a coordinated-benefits no-fault automobile insurance policy to Paul Holderness, who sustained a catastrophic spinal-cord injury in a motor-vehicle accident on October 1, 2018. The injury left him quadriplegic and ultimately led to his death on September 7, 2019. The policy was issued in accordance with MCL 500.3109a, as amended by 2012 PA 454, which permits an insured to obtain a no-fault policy at a reduced premium if the insured's healthcare insurer acts as the primary insurer for automobile-related injuries. Blue Cross Blue Shield of Michigan (BCBS) was Holderness's healthcare insurer.

Following the accident, Holderness was hospitalized at U of M Hospital until January 16, 2019. Upon his discharge, he was transferred to plaintiff Maple Manor Rehab Center of Novi, Inc. ("Rehab Center"). Rehab Center submitted bills to BCBS for payment of Holderness's expenses for treatment and services. On April 2, 2019, BCBS notified Holderness and Rehab Center via letter that Rehab Center's services were not eligible for payment because Holderness had plateaued in his recovery and would not benefit from further inpatient treatment. Despite this, BCBS paid a portion of Rehab Center's billings for services rendered to Holderness until August 2019. BCBS paid a discounted amount for some of these services, which Rehab Center accepted as payment in full for the charged services. BCBS issued Explanation of Benefits (EOB) forms indicating that Holderness was not responsible for paying the difference between Rehab Center's billing amounts and BCBS's discounted payments. Some services were billed by plaintiff Maple Manor Neuro Center, Inc. ("Neuro Center"), which is a separate entity that is not licensed as a healthcare provider. Plaintiffs assert that Neuro Center is Rehab Center's billing agent. BCBS's EOB forms for the Neuro Center billings state that BCBS denied payment because Neuro Center is not a licensed provider and that Holderness is responsible for these payments. For other services, BCBS issued an EOB stating that it required more documentation before the claim could be processed. In sum, the EOBs can be divided into three categories: (1) bills that were paid at a discounted price; (2) bills that were not processed because more information was needed; and (3) bills that were not paid because Neuro Center is not a licensed provider. It was only for the third category that the EOBs indicate that Holderness is responsible for any remaining balance.

Holderness assigned to plaintiffs any claims he might have against defendants for recovery of no-fault benefits, and plaintiffs filed suit against defendants to recover unreimbursed medical expenses allegedly due Holderness as PPI benefits under the Safeco policy. Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiffs could not establish a genuine issue of material fact that defendants were obligated to cover the disputed medical expenses as a secondary payer. Defendants also asserted the one-year-back restriction against plaintiffs' claims for charges accrued before March 4, 2019. Defendants reasoned that, because the complaint was filed on March 4, 2020, charges accrued more than one year before the complaint was filed were ineligible for payment. Defendants further argued that plaintiffs' timely claims were without merit because the EOBs and other documents established that BCBS did not deny coverage. Defendants also argued that they were not obligated to pay the difference between Rehab Center's full charges and BCBS's discounted payments, and they denied any obligation to pay submitted bills for which BCBS requested additional information. Defendants claimed that plaintiffs' attempts to issue bills listing Neuro Center as a provider were related to a fraudulent

---

[2] Safeco is a division of defendant Liberty Mutual Insurance Company.

billing scheme. Plaintiffs argued in response that the April 2, 2019 letter from BCBS triggered defendants' duty to pay. Plaintiffs denied that they were required to appeal BCBS's denial of benefits before seeking payment from defendants. Plaintiffs argued that they permissibly used Neuro Center as a billing agent, but to prevent any confusion, they reissued the bills that previously were issued under the name Neuro Center.

The trial court granted defendants' motion. Plaintiffs thereafter moved for relief from judgment, relying largely on letters from BCBS reaffirming the April 2019 letter denying coverage of various claims. The trial court denied the motion, and this appeal followed.

## II. DISCUSSION

### A. STANDARDS OF REVIEW

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (citations omitted). "A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 474-475; 776 NW2d 398 (2009). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 605 (quotation marks and citation omitted).

Issues involving "the proper interpretation and application of statutes and court rules" are reviewed de novo. *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018).

The trial court's decision on a motion for relief from judgment is reviewed for an abuse of discretion. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002). An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

### B. ANALYSIS

### 1. SUMMARY DISPOSITION

The trial court erred by granting defendants' motion for summary disposition with respect to the bills that were denied coverage because they listed an unlicensed provider, but it properly granted summary disposition with respect to the other bills.[3]

MCL 500.3105(1) provides: "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." "[P]ersonal protection insurance benefits are payable for" the expenses enumerated in MCL 500.3107, including "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). "The Courts have determined that an expense is not an 'allowable expense' within the meaning of MCL 500.3107(1)(a) . . . unless (1) the charge for the expense is reasonable, (2) the expense is reasonably necessary for the insured's care, and (3) the expense is incurred." *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 637; 552 NW2d 671 (1996), citing *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 50; 457 NW2d 637 (1990).

"MCL 500.3109a permits an individual to coordinate his or her no-fault insurance policy and other health and accident insurance policies at a reduced premium rate." *St John Macomb-Oakland Hosp v State Farm Mut Auto Ins Co*, 318 Mich App 256, 263; 896 NW2d 85 (2016). The purpose of this statute "is to eliminate duplicative recovery for services and to contain insurance and healthcare costs." *Id*. (quotation marks and citation omitted). When individuals avail themselves of the opportunity to coordinate their policies, "the health insurer becomes primarily liable for medical expenses," "the no-fault insurer is not liable for medical expenses that the health insurer is required to pay for or provide," and the individual must therefore "make reasonable efforts to obtain payments that are available from the health insurer in order to establish that the benefits are not payable by the health insurer" prior to seeking payment from the no-fault insurer. *Id*. at 263-264.

Plaintiffs' central argument throughout these proceedings is that BCBS's denial letter of April 2, 2019 is conclusive proof that BCBS denied coverage for the disputed claims, thereby triggering defendants' obligation to pay the disputed expenses as no-fault benefits pursuant to the coordinated-benefits policy. Defendants' central argument is that BCBS did, in fact, partially approve and pay some of plaintiffs' charges at a discounted rate, which plaintiffs accepted as full payment without further liability to defendants' insured, Holderness, thereby precluding any further liability by defendants for those charges because Holderness was not responsible for the difference between the portion of charges in excess of BCBS's discounted payments. Defendants also assert that BCBS justifiably denied specific charges, or requested additional information that plaintiffs did not provide, and Holderness likewise was not held responsible for bills that were denied pending further information. Accordingly, defendants argue that Holderness did not "incur" expenses for plaintiffs' services that were subject to reimbursement as a PPI benefit. This issue thus turns on the factual question whether plaintiffs demonstrated that BCBS denied claims

---

[3] We note that plaintiff does not contest the trial court's ruling that the one-year-back rule, MCL 500.3145, precludes recovery for any losses incurred before March 4, 2019. Indeed, plaintiff conceded as much at the summary disposition hearing.

that caused Holderness to incur expenses not covered by his healthcare policy, thereby triggering defendants' obligation to pay PPI benefits under the coordinated-benefits policy.

"The word 'incurred' is not defined in the no-fault act, so we accord the word its plain and ordinary meaning within the context of the statute." *Shanafelt*, 217 Mich App at 638. "The primary definition of the word 'incur' is 'to become liable for.' " *Id.*, quoting *Random House Webster's College Dictionary* (1995). In *Shanafelt*, this Court held that a plaintiff with a coordinated-benefits policy "incurred" medical expenses by accepting treatment, rendering her liable to pay those expenses notwithstanding her contract with a healthcare insurer to compensate her for those expenses or pay them directly. *Id.* In this case, defendants offered evidence that plaintiffs excused Holderness from paying the difference between plaintiffs' original charges and BCBS's discounted payments when they accepted the discounted payments as full payment for the services provided. Plaintiffs have not offered evidence to the contrary. Plaintiffs rely on BCBS's denial letter as conclusive proof that BCBS denied payment, but they offer no evidence explaining why BCBS's EOBs and provider vouchers show that payment was, in fact, made. Therefore, with respect to these charges, plaintiffs failed to establish a genuine issue of material fact regarding whether Holderness incurred expenses entitling him to compensation as PPI benefits. Similarly, BCBS's EOBs established that some of plaintiffs' charges were not outright denied, but left unprocessed pending further documentation. Plaintiffs did not produce any evidence suggesting that they attempted to comply with these requests for additional information and thereby establish that BCBS denied primary responsibility for the disputed charges. Plaintiffs likewise produced no evidence suggesting that they charged these expenses to Holderness. Accordingly, plaintiffs failed to establish a genuine issue of material fact regarding whether Holderness incurred these expenses, which is a prerequisite to defendant's liability. MCL 500.3107(1)(a).

However, a different analysis applies to the claims for which BCBS denied coverage on the basis of Neuro Center's status as an unlicensed healthcare provider. Plaintiffs offered evidence that it issued bills listing Neuro Center as the provider but that Neuro Center was actually only acting as a billing agent. Rehab Center's co-owner, Dr. Stella Evangelista, testified that Neuro Center was Rehab Center's billing agent. Genene Dennis, Rehab Center's medical biller, testified that Neuro Center was not a provider, that the bills should not have listed Neuro Center as a provider, and that corrected bills were submitted to BCBS. Dennis also submitted an affidavit explaining the bills that listed Neuro Center:

> 1. I, Genene Dennis, am a Medical Biller for Plaintiffs in this action.
>
> 2. I have been practicing as a Medical Biller for over 20 years.
>
> 3. Susan Taylor, who was formerly an outside Medical Biller for Maple Manor prepared and submitted some of the medical bills for PAUL HOLDERNESS.
>
> 4. However, Susan Taylor used a different billing form (HICF 1500) and she used the billing agent Maple Manor Neuro Center. . . .

5.  Although Susan Taylor's billing is technically correct, in my experience, I found that the preferred billing form among insurance companies is the UB-04 and that [it] is better to remove [sic] the billing agent to create less confusion.

6.  Accordingly, I later corrected all the medical bills of Susan Taylor by using the preferred billing form (UB-04) and by removing the billing agent Maple Manor Neuro Center, and by replacing it with the actual licensed medical service provider Maple Manor Rehab Center of Novi.

Evangelista's testimony, Dennis's testimony, and Dennis's affidavit establish a genuine issue of material fact regarding whether the Neuro Center charges were properly denied on the basis that Neuro Center was listed as the provider and whether defendants may be liable for these charges as a secondary payer because they are not subject to coverage by BCBS. Therefore, the trial court erred by granting summary disposition with respect to bills that were submitted under Neuro Center's name, denied on the ground that Neuro Center was not a licensed provider, and resubmitted under Rehab Center's name.[4]

## 2.  RELIEF FROM JUDGMENT

To the extent plaintiffs argue that the trial court erred by denying plaintiffs' motion for relief from judgment, this argument is without merit because the trial court properly concluded that plaintiff did not satisfy the requirements of MCR 2.612(C)(1).

MCR 2.612(C)(1) provides that relief from a "final judgment, order, or proceeding" may be granted for the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

---

[4] Plaintiffs also argue that the trial court erred by granting summary disposition in favor of defendants because plaintiffs failed to appeal BCBS's decisions denying coverage for various claims, but the record does not support plaintiffs' argument that defendants moved for, or that the trial court granted, summary disposition on this basis. Plaintiffs additionally argue that the trial court failed to consider that they would have to repay BCBS for payments BCBS previously made for Holderness's care and treatment. However, plaintiffs never offered evidence that BCBS had determined that payments were previously made by mistake or that BCBS had attempted to recoup any payments from plaintiffs. When a party fails to offer a timely response to a motion under MCR 2.116(C)(10), the trial court may exclude from consideration any belated response and supporting evidence. See *Prussing v Gen Motors Corp*, 403 Mich 366, 370; 269 NW2d 181 (1978) (holding that the plaintiff's "belated attempt to file an affidavit in opposition was in such form and manner that the judge's failure to treat it as a timely opposing affidavit was not an abuse of discretion"). Therefore, the trial court was not required to consider the exhibit that plaintiffs attempted to introduce at the summary disposition hearing.

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

(d) The judgment is void.

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

Plaintiffs cited Subsection (C)(1)(f) in their motion, but they also implicitly relied on Subsection (C)(1)(b) by suggesting that a statement from BCBS's counsel and two provider vouchers established a genuine issue of fact.

To the extent that the exhibits submitted by plaintiffs in support of their motion could be considered, they do not establish questions of fact. The letter from BCBS's counsel reaffirming that coverage had ceased does not negate the evidence that BCBS did, in fact, make payments for Holderness's care. The provider vouchers are not accompanied by contextual information explaining the statements in the letter. The statements may indicate that BCBS created accounts receivable for Rehab Center in the amounts of $13,500.81 and $2,054.99, but this is not clear. These figures correspond to Rehab Center's charge ($26,198.24) and BCBS's discounted payment ($13,500.81) as shown on the EOB. The provider voucher was not new to plaintiffs. It was an exhibit to defendants' summary disposition motion, without the anonymous handwritten note "take back pmt." It pertained to only 31 days of services while Holderness was in residence at Rehab Center. It does not support plaintiffs' allegation that BCBS intended to recoup all payments made for Holderness's care. The second provider voucher also demonstrates, at most, that BCBS created an accounts receivable in the amount of $871.02, with no context explaining how this triggered defendants' obligation to pay for Holderness's care. These documents are neither new evidence nor proof that the trial court erred by granting summary disposition for defendants with respect to the discounted payments.

## III. CONCLUSION

The trial court's order granting summary disposition is reversed with respect to the bills that were denied by BCBS because they listed an unlicensed provider. The trial court's orders regarding summary disposition and relief from judgment are affirmed in all other respects. This case is remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado